**STATE of Missouri, Plaintiff-Respondent,**

v.

**Jerome POWELL, Defendant-Appellant.**

**Nos. 43925, 44026.**

Missouri Court of Appeals, Eastern District, Division Three.

March 30, 1982.

56

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

Richard Burke, St. Louis, for plaintiff-respondent.

SNYDER, Judge.

This is an appeal from a conviction of first degree assault. § 565.050, RSMo.

1978. A jury found appellant guilty and assessed his punishment at thirty years which he was sentenced to serve in the Missouri Department of Corrections. The judgment is affirmed.

Appellant argues the trial court erred in not granting appellant's mistrial motion when the state, on cross-examination of appellant, dwelt on the particulars of appellant's prior convictions. Appellant also contends the trial court erred in refusing to suppress courtroom identification of appellant. Neither point has merit.

On March 9, 1980, at approximately 5:00 p. m. Ronald Brewster and his girlfriend, Gloria Moore, stood on the steps in front of Ms. Moore's mother's apartment, located at 3824 Enright, St. Louis, Missouri. Ms. Moore saw appellant walk across the street in front of the apartment. The appellant waved as he walked past and Ms. Moore waved back. Appellant then walked out of view around the corner of the apartment building.

Ms. Moore had known appellant for three years because appellant's mother formerly lived in the apartment above Ms. Moore's mother's apartment. Mr. Brewster, in the course of visiting Ms. Moore, also had become acquainted with appellant.

Shortly after appellant walked by and out of view of Moore and Brewster, a person appeared by the corner of the apartment building and called out, "Brewster!" Ms. Moore and Mr. Brewster turned to see who called. As soon as they turned, the person fired a succession of shots from a .38 caliber pistol, striking Mr. Brewster three times.

When the shots began, Mr. Brewster fell to the steps and tried to crawl into Ms. Moore's mother's apartment. Ms. Moore also fell to the steps and tried to help Mr. Brewster into the apartment. Once in the apartment, Ms. Moore called the police.

The first policeman arrived within five minutes. The officer separated Ms. Moore and Mr. Brewster and then asked them to describe the assailant. Both Moore and Brewster identified appellant, by name, as

the assailant. Other officers then arrived at the scene. One of the officers showed Mr. Brewster and Ms. Moore one photograph of appellant. Both Brewster and Moore identified the person in the photograph as the assailant. Three days later, another officer brought two photographs (front and profile) of appellant to Brewster's hospital room. Brewster again identified the person in the pictures as the assailant. Both Ms. Moore and Mr. Brewster identified appellant at trial as the man who shot Brewster.

Appellant took the stand in his own defense. On cross-examination the following colloquy took place.

MR. DALY—[Prosecutor]: You have two convictions, don't you sir?

A  Yes

MR. DALY: What is the other one for?

A  The other one? Same thing, carrying a concealed weapon.

MR. DALY: What type of weapon?

MR. BURK (sic)—[Defense Counsel]: Your Honor, may be (sic) approach the bench?

THE WITNESS: I don't know what it was. I never—

THE COURT: Just a minute. What was your request, Mr. Burk (sic)?

(The following proceedings occurred at the bench.)

MR. BURK (sic): Your Honor, I would object at this time as improper impeachment on prior convictions.

THE COURT: I am inclined to agree, Mr. Daly.

MR. DALY: I'll withdraw the question, Your Honor.

THE COURT: You can't go into the fact.

(The following proceedings occurred in open court.)

MR. DALY: Did you carry a gun on March the 9th, 1980—

MR. BURK (sic): Your Honor, I'm going to object to this question as being irrelevant and improper impeachment.

THE COURT: Be overruled.

MR. DALY: At 3824 Enright?

A  No.  I don't carry a weapon.

MR. DALY:  You what?

A  I don't carry weapons.

MR. DALY:  You don't carry weapons?

A  No.

MR. DALY:  Well, you told us you got two convictions for carrying weapons.

A  That's right.

MR. DALY:  But you don't carry weapons?

MR. BURK (sic):  Your Honor, may we approach the bench, please?

MR. DALY:  Never?

A  I don't carry weapons.

THE COURT:  All right.  Mr. Burk (sic) has an objection.

(The following proceedings occurred at the bench.)

MR. BURK (sic):  Your Honor, at this time I'm going to ask for a mistrial on the grounds that Mr. Daly has asked the question attempting to establish that my client's prior convictions lead to the inference that he has a propensity to carry weapons and is assaultive.  I'm going to ask for a mistrial at this time.  It's also in violation of this court's sustaining my motion in limine.  He's, clearly done it.  I'm going to ask for a mistrial.

THE COURT:  Well, I don't agree at all, Mr. Burk (sic).  As a matter of fact, I'm overruling your objection and denying your Motion for Mistrial.  I think the witness's answer justified the question.

(The following proceedings occurred in open court.)

MR. DALY:  You never carried a weapon?

A  I never have carried a weapon.

MR. DALY:  Never in your lifetime?

A  Never.

MR. DALY:  Never carried a handgun?

A  Never.

MR. DALY:  Never carried a revolver?

A  Never.

MR. DALY:  Never carried a .38 revolver?

A  I never have.

MR. BURK (sic);  Your Honor, this is repetitive.

THE COURT:  Sustained.

In his first point relied on, appellant contends that the trial court erred in refusing to grant appellant's motion for a mistrial during the above colloquy.  Appellant argues that the state's repetitious questioning on whether appellant ever carried weapons exceeded the scope of proper cross-examination, although appellant's objection that the questioning was repetitive was sustained.  He asserts the state impermissibly emphasized appellant's prior convictions, insinuating that he had a propensity to commit the charged offense.  The point is denied.

■  The extent of cross-examination rests largely within the discretion of the trial court and appellate courts will not interfere unless that discretion is abused, *State v. Dunn*, 577 S.W.2d 649, 653[3,4] (Mo. banc 1979).

When defendant takes the stand, he is subject to the cross-examination and impeachment as is any other witness. § 546.260, RSMo.1978.  The prior convictions of any witness, including the accused, are admissible for impeachment purposes. § 491.050 RSMo.1978.

■  Generally, the use of prior convictions for impeachment is limited to admitting the nature and number of those convictions.  Prosecutors may not delve into the details of the prior convictions or emphasize them unduly.  *State v. Scott*, 459 S.W.2d 321, 324 (Mo.1970);  *State v. Newman*, 568 S.W.2d 276, 281 (Mo.App.1978).

■  But if the defendant makes ambiguous statements, or denies his guilt in the prior cases in which he was convicted, or makes statements designed to blunt the impact of the prior convictions, it is within the trial court's discretion to permit the prosecutor to test and challenge these statements.  *State v. Whitt*, 592 S.W.2d 316, 317[1] (Mo.App.1979);  *State v. Williamson*, 584 S.W.2d 628, 630[1] (Mo.App.1979).

■  In the case under review, the prosecutor first attempted to go into the details of the prior convictions.  There was no er-

ror at this stage in the cross-examination because defense counsel objected and when the court indicated it would sustain the objection, the prosecutor withdrew the question.

The prosecution then left the matter of prior convictions and began asking appellant about the day of the shooting. The question, "Did you carry a gun on March the 9th, 1980?" concerned none of the details of the prior crimes. The question was directly related to the issue at hand, whether the appellant shot Mr. Brewster on that day. There was no error in permitting this question.

Appellant's response, "No. I don't carry a weapon." is ambiguous. Appellant could have meant that he did not carry a weapon on March 9, 1980 or that he has never carried a weapon. The trial court could properly permit the prosecution to clarify appellant's response. *State v. Whitt, supra* at 317.

Appellant's clarifications that he never carried weapons constituted an assertion of innocence designed to blunt the impact of the two prior convictions. The trial court could properly permit the prosecution to challenge appellant's claim. *State v. Whitt, supra; State v. Williamson, supra* at 630.

Appellant next claims that the trial court erred in denying appellant's motion to suppress the in-court identifications by Ms. Moore and the victim. Appellant argues the showing of only one photograph to the witnesses was so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Appellant insists the in-court identification was not based on the witnesses' viewing of the assailant at the time of the shooting because the witnesses had, at best, one second to view the assailant before the shooting. The point is ruled against appellant.

■ The admissibility of identification evidence is to be determined under the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977); *Neil v. Big-*gers, 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Admission of the identification does not violate due process "so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite, supra*, 432 U.S. at 106, 97 S.Ct. at 2243.

■ The United States Supreme Court announced five factors in considering the admissibility of identification evidence: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) the accuracy of the witness' description of criminal prior to the suggestive identification; (4) the witness' level of certainty at the suggestive identification; and (5) the time between the crime and the suggestive identification. *Manson v. Brathwaite, supra* at 114, 97 S.Ct. at 2253; *Neil v. Biggers, supra*, 409 U.S. at 199, 93 S.Ct. at 382. *See State v. Terry*, 582 S.W.2d 337, 341[6] (Mo.App.1979).

■ The identification will be excluded only if, after weighing the factors, the court finds a very substantial likelihood of irreparable misidentification. *Manson v. Brathwaite, supra*, 432 U.S. at 116, 97 S.Ct. at 2254; *Neil v. Biggers, supra*, 409 U.S. at 198, 93 S.Ct. at 381.

In the case at bar the only factor weighing against admitting the in-court identifications is the opportunity to view the criminal at the time of the crime. Both Ms. Moore and Mr. Brewster said that they only had one or two seconds to view the assailant before the shots began and they fell to the steps. Such a short time to view the criminal weighs against admissibility.

■ All the other factors, however, weigh in favor of admissibility. The assailant, by calling out, "Brewster!", intentionally got both witnesses' attention before firing. Both witnesses gave the best possible description of the assailant; they named him. Both witnesses were certain that the man in the photograph, the appellant, was the assailant. And the police showed the witnesses the photograph, at the most 30 minutes after the shooting.

Given all these factors weighing in favor of admissibility, this court finds that the trial court did not err in permitting the in-court identifications.

The judgment is affirmed.

REINHARD, P. J., and CRIST, J., concur.