**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Ernest Lee PHELPS,**
**Defendant-Appellant.**

No. 47395.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 18, 1984.

Robert Jackson Maurer, Asst. Public Defender, Clayton, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant-appellant, Ernest Lee Phelps, was jury tried and convicted of robbery first degree. § 569.020 RSMo 1978. Defendant, a prior offender, was sentenced to twenty-five years imprisonment.

Defendant's sole point on appeal is that the trial court erred in allowing the state to cross-examine defendant about the details of a prior conviction for robbery second degree. We reverse and remand for a new trial.

On direct examination defendant acknowledged that he had a prior conviction for second degree robbery and armed criminal action. The following testimony was given on direct examination:

Q: You have been convicted of a crime before, haven't you?

A: Yes, sir.

Q: What was that crime?

A: I was convicted of second degree robbery and armed criminal action.

Q: When was that?

A: .. February 13, 1981, I think.

Q: If I tell you it was June 25, 1981, would that sound right?

A: Huh?

Q: If I say you were convicted ..

A: .. oh, when was I convicted? Yeah, that would sound right when I was convicted.

Q: Did you go to trial on that case, or plead [sic] guilty?

A: I plead guilty of that charge.

Q: You were guilty of that charge, weren't you?

A: Yes sir.

On cross-examination the following occurred:

Q: You plead guilty because it was a negotiated plea?

A: I knew nothing about a negotiated plea.

Q: You weren't asked by the court, as a result of an arrangement between you and the prosecutor's office ..

[DEFENSE COUNSEL]: I think we are going a little far.

THE COURT: Overruled. Proceed.

Q: You plead guilty in exchange for a plea negotiation, didn't you?

. . . . .

A: I plead guilty because the lawyer that I had said, you know, there is no sense in trying to lie or anything like that, so I plead guilty to the charge.

. . . . .

Q: Was that robbery not in Delwood? [sic—De*ll*wood]

A: That robbery was in Delwood.

Q: You didn't live in Delwood, did you? You lived down in north St. Louis city at the time of the first robbery?

A: Sir?

Q: You lived down in north St. Louis, not Delwood?

A: When the robbery took place in Delwood, I was residing at 5424 Queens.

Q: That is right, in St. Louis?

A: That is right.

Q: You came out to Delwood to do the robbery?

A: I did not come out to Delwood to do the robbery. I had not planned on doing the robbery in Delwood. I had got off work, I was with a friend and we were drinking. I had drank about a fifth of whiskey and I was drunk and that is how the robbery occurred.

Q: Did you get the gun before or after you got drunk?

A: Sir, could you explain yourself as to what you are talking about? I don't understand what you're talking about.

Q: You are saying now, the first one was only because you were drinking. Was it before or after you drank that fifth of whiskey you procured that gun?

[DEFENSE COUNSEL]: We are going a little far.

THE COURT: Overruled, this is cross-examination.

Q: You told them the first robbery was out in Delwood, you plead guilty to, you didn't have anything to do with it?

A: I don't understand how you are putting the question, sir.

Q: How much education have you had?

A: I have had a twelfth grade education, a year in junior college.

Q: You had one year of college. You just told these people you didn't plan the first robbery in Delwood, right?

A: Yes, sir, I told them I did not plan it.

Q: And, you did that after you drank a fifth of whiskey?

A: That is right sir.

Q: My question is this. Did you have the gun before or after you drank the fifth of whiskey?

. . . . .

A: I had the gun after I drank the whiskey.

Q: Where did you get the gun?

A: Where did I get the gun from? I took the gun .. it had belonged to my stepfather and I took it from the house.

Q: After you drank the whiskey?

A: That was after I drank the whiskey.

Q: Came out to Delwood and did the robbery?

A: I didn't exactly know where I was going. I was with another person. I didn't know my way around the county and I was not driving, and he did the driving and that is where he ended up.

Q: Now, I want you to tell these people how long it was after you were given probation for the first robbery in Delwood, between that date and July 20, the second robbery in Delwood [case on trial]. How many days between June 25, of 1981 and July 20, of 1981, sir, with your college education?

A: How many days between June 25 ..

Q: And July 20, of 1981. How long were you on probation for the second robbery?

A: How long was I on probation? I was on probation for about, I would say something like twenty-four days.

Pursuant to § 491.050 RSMo Supp.1982, ".... any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty may be proved to affect his credibility in a criminal case ...." This statute confers an express right on the state to show prior convictions and the nature and kind thereof for the purposes of impeachment, or to affect credibility. *State v. Sullivan*, 553 S.W.2d 510, 515 (Mo.App.1977).

The scope of cross-examination is limited to prevent the cross-examiner from delving into the details of the crime leading to the prior conviction. It is permissible however to elicit the nature, dates and places of each prior crime and the resulting sentence. *State v. Sanders*, 634 S.W.2d 525, 527 (Mo.App.1982). The state was entitled to rebut the inference raised by the defendant that his prior plea of guilty was made solely because he was guilty and his present plea of not guilty was thereby dignified. *See State v. Turner*, 655 S.W.2d 710 (Mo.App.1983).

Our review of this preserved issue is limited to a determination of clear abuse of

trial discretion. *State v. Lane,* 613 S.W.2d 669, 679 (Mo.App.1981). The defendant admitted the prior conviction and the resultant probation. The purpose of impeaching his credibility by reference to the prior conviction was fully accomplished by this testimony. No further justification existed for inquiry into the details of the prior crime. *State v. Porter,* 538 S.W.2d 888, 891 (Mo.App.1976). We fail to perceive any impeachment value in the prosecutor's attempt to elicit the details of defendant's prior crime. The court permitted the state to inquire as to the planning, acquisition of weapon, and the relationship between the defendant as a resident of the city of St. Louis and the location of the crime, St. Louis County.

In the second half of the state's closing argument the state made further reference to the prior conviction by stating, "[h]ad he not had his freedom restored to him, he wouldn't be here today. [A reference to probation on the first charge]. He talked about not being here. He was given that extra chance and, where did it go? .. but, they come out here and strike like a cobra and then slither back to north St. Louis to the sanctity of the city and a special alibi because of their loved ones." The state's cross-examination went well beyond impeachment and the excess was employed in argument. The cross-examination, linking the details of the first robbery and the sentence of probation with the charged crime was erroneously permitted, was an abuse of discretion and exceeds the scope of cross-examination set forth in § 491.050 RSMo Supp.1982.

This case is controlled by *State v. Sanders,* 634 S.W.2d 525 (Mo.App.1982) because of the factual similarity. We there held prejudicial error occurred when the state sought additional details about prior convictions which served no legitimate purpose nor were they justified for the purpose of impeachment. In *State v. Porter,* 538 S.W.2d 888, 891 (Mo.App.1976) we found no prejudicial error because the court sustained proper objection on this ground and instructed the jury to disregard the improper questions. Here the court permitted the questions and the prosecutor increased the prejudicial effect of that error by referring to the answers in closing argument.

Reversed and remanded for new trial.

CRANDALL, J., concurs.

REINHARD, C.J., concurs in separate opinion.

REINHARD, Chief Judge, concurring.

I concur in the result reached by Judge Karohl because the cross-examination went too far. However, I believe a few additional words are necessary because of the increasing number of appeals in which the defendant alleges error over cross-examination of his prior convictions. In my opinion, when a defendant elects to testify, he largely controls the extent of cross-examination concerning his prior convictions. If the defendant unequivocally, clearly and concisely testifies to all of his prior convictions, including the nature of the offense, dates, place and resulting sentence, further examination by the state is generally foreclosed.[1] However, in many of the cases reaching us on appeal, the defendant equivocates, tries to explain or does not fully and accurately disclose his prior convictions. In those cases the prosecutor may inquire further.

In the case at bar, on direct examination defendant did not fully disclose his prior convictions, because he omitted mentioning the resulting sentence he received, as well as the place of the crime. Moreover, on direct examination, defendant intended to create the clear implication that he had pleaded guilty in the previous case because he was guilty and he was standing trial in this case because he was not guilty. The assistant prosecuting attorney in his cross-examination asked defendant whether or not he had pleaded guilty because of a negotiated plea. At this point the defense counsel objected. The court's overruling of

---

1. I am speaking of the situation where the prior convictions are used for impeachment purposes only and not where the prior crimes may be admissible as a common plan or scheme.

this objection was proper. *See State v. Turner*, 655 S.W.2d 710 (Mo.App.1983). The next several questions regarding the underlying facts of the prior conviction went too far, though, the state was entitled to elicit that the crime occurred in Dellwood. However, defendant made no objection to these questions and, therefore, cannot be the basis for a reversal. Finally, after the assistant prosecuting attorney mentioned the use of a weapon in the prior offense, defense counsel objected. The trial court should have sustained that objection and its failure to do so at that juncture was clearly prejudicial error.