STATE of Missouri, Respondent,

v.

Nathaniel Mandray
RICHARDSON, Appellant.

No. 56731.

Missouri Court of Appeals,
Eastern District,
Division One.

May 29, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 1990.

Application to Transfer Denied
July 31, 1990.

Christine Sullivan, St. Charles, for appellant.

William L. Webster, Atty. Gen., Stewart M. Freilich, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant was convicted, following a jury trial, of unlawful use of a weapon and sentenced as a prior offender to four years' imprisonment. He appeals. We reverse and remand for a new trial.

Defendant, a black man, lived in a boarding house in Louisiana, Missouri. Gary Walker, one of the State's witnesses, lived in the same boarding house and had previously argued and fought with defendant. Mr. Walker testified that after drinking approximately a six pack of beer, he started to leave the boarding house to meet his mother who was outside. Defendant entered the building. Mr. Walker testified that although he said nothing to defendant, defendant continuously said to him, "Let's fight" and followed him outside.

Outside, defendant was in the presence of Mr. Walker, his mother and two sisters. Words were exchanged. Defendant then pulled a gun out of his pocket. While the State's evidence showed he did so in an angry and threatening manner, defendant claims he did so to protect himself from injury from the four white persons. The crowd dispersed. Defendant put the gun back in his room and then sat on the front porch.

The police arrested defendant and, upon his request, took him to the mayor's house. The mayor, who had employed defendant, told him to give the gun to the police. He did. Defendant was charged with unlawful use of a weapon, § 571.030.1(4), RSMo 1986.

■ Defendant claims the trial court erred in failing to suppress the gun as evidence because it was obtained as a result of coercive interrogation by the mayor. However, the fact the gun was in evidence had little to do with the outcome of the case because defendant admitted he pulled it out of his pocket. More importantly, defendant failed to object when the gun was offered into evidence. The failure to object at trial waived defendant's claim which initially had been raised in his pre-trial motion to suppress. *State v. Vinzant,* 716 S.W.2d 367, 370 (Mo.App.1986). This point is denied.

■ Defendant's second point concerns the prosecution's cross-examination of defendant about a prior weapons charge and conviction. There is no question that prior convictions are the proper subject of cross-examination for the purpose of impeaching a witness. *State v. Silcox,* 694 S.W.2d 755, 756–57 (Mo.App.1985). There is also no question that evidence of the nature and kind of prior conviction may be elicited from a witness without going into the details of the offense. The question here is whether the prosecutor went too far beyond the function of impeaching defendant and entered the realm of improperly attempting to prove defendant's guilt based on a prior conviction. We think he did.

The prosecutor first broached the subject of the prior conviction during his examination of Officer Burton. On redirect examination the prosecutor asked if the officer knew about defendant's prior conviction for the very same type of offense. The officer stated he did not. Counsel for defendant failed to object.

The matter of the conviction was next brought out by the defense attorney. She asked defendant if he had been convicted of a prior felony. He said he had. He then stated his prior conviction had initially started out as an unlawful use of a weapon, but it may have been reduced from a class D felony to some type of misdemeanor. Defendant was not sure; however he did serve a year in the county jail. On cross-examination the prosecutor asked defendant why he did a year in the county jail. Defendant answered and further claimed someone probably manipulated a witness to convict him. The prosecutor retorted: "Mr. Richardson, you have spent time, spent time in the jail because you blew a hole that big around in the door in a home, real estate, with another human being on the other side of the door." Defense counsel objected on the ground the State was not allowed to show facts of a prior conviction. The objection was sustained. The jury was instructed to disregard the question.

Thereafter the following occurred on cross-examination:

Q  Now, I believe you testified that this charge that you were convicted of was reduced to a misdemeanor?

A  What I mean was I did a year on it. I got sentenced to a year for a felony conviction.

Q  The felony conviction was for use of a dangerous weapon?

A  Well, whatever it was that I was charged with I know was that I lost use of the weapon.

Q  You know what you were charged with, you know what you did?

A  Mr. Calhoun, just one thing now, you exposed me, you exposed me to this. I don't know nothing about this criminal stuff you are talking about here. This was the first and only time I've been convicted of anything in my life. I don't exactly know what you mean. All that I know is that in here is unlawful use of a weapon and I did a year for that in the county jail.

Q  Unlawful use of a weapon, it's a felony, don't you know?

A  Well, being that there was no evidence to convict me in the first place, it shouldn't have been that. It shouldn't

have been a year but I got a year. I done it and paid for it.

Q Now, I'm going to ask you about blowing a hole in the door—

Defense counsel again objected about going into the substantive details of the prior conviction. The court sustained the objection and denied the defendant's request for a mistrial.

During cross-examination, the prosecutor accused defendant of drinking and taking drugs. He also asked if defendant talked constantly about "stickups," shootings, "bad women," and previously serving time in jail. The prosecutor then asked, "You knew as well then that these people, the Walkers, were aware of what you've been in trouble for?" Defendant's objection was overruled.

The prosecution questioned defendant about whether and why he had pictures of guns on the wall of his jail cell. Defendant answered that he couldn't put up pictures of women and he liked to hunt and fish, so he put up outdoor sports pictures, including guns.

Finally, defendant was questioned about the gun used in the instant case:

Q Who did you buy it from?

A Mike Anderson.

Q Yes, and you told the police that you bought it from Mike Anderson?

A You asked me. I'm telling you that I bought it from Mike Anderson.

Q I'm asking you, did you tell the police that you bought it from Mike Anderson?

A Yes, and I'm telling you as well.

MS. SULLIVAN: Objection, irrelevant.

THE COURT: Sustained.

A I have nothing to hide about that. He's not here—nothing that I have done is—that's not why I'm here.

Q (By Mr. Calhoun) As a matter of fact, the gun had been stolen ten hours—

MS. SULLIVAN: Objection, your Honor. This is irrelevant.

THE COURT: Sustained.

MR CALHOUN: No further questions.

MS. SULLIVAN: I request that you ask the jury to disregard the Prosecutor's last statement.

THE COURT: Jury will disregard last question of the Prosecuting Attorney.

Defendant again requested a mistrial. The request was denied.

The prosecution improperly emphasized the details of defendant's prior conviction when he twice referred to defendant "blowing a hole in the door." *State v. Green,* 707 S.W.2d 481, 483[2] (Mo.App.1986). While it is true the defendant initially denied his guilt the first time the prosecutor referred to the prior conviction, the trial court, in its discretion, elected to stop any further references to the details. *State v. Powell,* 632 S.W.2d 55, 58[3] (Mo.App.1982). The prosecutor continued to question defendant about the amount of time served and whether he was charged with a felony or misdemeanor. He ignored the court's earlier ruling and again referred to the details of the earlier conviction. These repeated references emphasizing the use of a gun were devastating to defendant. *Green,* 707 S.W.2d at 483. They were an improper attempt to show defendant's propensity to commit the crime for which he was on trial. *State v. Reese,* 274 S.W.2d 304, 307 (Mo. banc 1954).

■ The prosecutor further prejudiced defendant by introducing evidence that the gun used in the crime for which he was on trial had been stolen and by inferring that defendant had stolen it. Defendant was not on trial for stealing the gun. Such evidence had no legitimate tendency to directly establish defendant's guilt for unlawfully using a weapon. Nor was it relevant to prove motive, intent, absence of mistake or accident, a common plan, or identity. *State v. Jones,* 578 S.W.2d 286, 288[3] (Mo.App.1979). Defendant is entitled to a new trial.

Defendant's third point relates to prejudice in the prosecutor's closing argument. This question need not be determined at this time because this point of error may not arise on retrial.

Judgment reversed and remanded for a new trial.

GARY M. GAERTNER, P.J., concurs.

REINHARD, J., dissents in separate opinion.

## REINHARD, Judge, dissenting.

I respectfully dissent. In addition to the four persons mentioned in the majority opinion, a fifth person, unrelated to the other four, testified as to defendant's conduct. The evidence revealed that defendant worked for the mayor.[1] Officer Burton testified that defendant was read his rights and was told he could make one phone call. Defendant asked to call the mayor; upon being contacted, the mayor requested that the officers drive defendant to his home. There, the mayor convinced defendant to show the officers where the gun was located; the officers drove defendant to the boarding house, and defendant came out of the house carrying a loaded gun and handed it to Officer Burton.

During the cross-examination of Officer Burton, defense counsel attempted to show that Burton did not consider defendant dangerous:

Q. You did not perceive Mr. Richardson to be any danger to you?

A. No, not at that point of time.

Q. Not when he had a loaded gun in his hand?

A. Not a threat to me, no, ma'am.

It was in response to the foregoing line of questioning that the prosecutor on redirect asked Officer Burton whether he was aware of defendant's conviction "for the very same type of offense[.]" Defense counsel did not object. Burton responded that he was not aware of the conviction.

When defendant took the stand, defense counsel inquired about his prior conviction:

Q. Now, Mr. Richardson, you have a prior conviction, a prior felony conviction; is that correct?

A. Yes, ma'am.

Q. And what was that conviction for?

A. Well, it initially started out as unlawful use of a weapon, but, however, it was broken down to some other type of charge, being that it was reduced any-

way from a D felony to a, I believe it was some type of misdemeanor. I don't know but I did a year for it.

In cross-examining defendant, the prosecutor asked him why he served a year in the county jail. Defendant responded, "Well, probably because someone manipulated a witness to nick me ... did you ever consider that?" The prosecutor then asked the following question: "Mr. Richardson, you have spent time, spent time in the jail because you blew a hole that big around in the door in a home, real estate, with another human being on the other side of the door." Defense counsel objected and requested that the jury be instructed to disregard the prosecutor's statement. The court sustained the objection and instructed the jury to "disregard the last statement of the prosecutor." Later, the prosecutor asked the following:

Q. Now I believe you testified that this charge you were convicted of was reduced to a misdemeanor?

A. What I mean was I did a year on it, I got sentenced to a year for a felony conviction.

Q. The felony conviction was for the use of a dangerous weapon.

A. Well, whatever it was that I was charged with I know that I lost use of the weapon.

. . . .

Q. Unlawful use of a weapon, its a felony, don't you know?

A. Well, being that there was no evidence to convict me in the first place, it shouldn't have been that, it shouldn't have been a year but I got a year. I had done it and I had paid for it.

Q. Now I am going to ask you about blowing a hole in the door—

Defense counsel objected, and the court initially sustained the objection, but ultimately in denying defense counsel's request for a mistrial, the court stated: "I think that actually the defendant quite—because the defendant opened it up voluntarily on his own just by being too far afield I think there would be good grounds

1. From the record, it appears that defendant did not work for the mayor in his official capacity.

if we wanted to allow [the prosecutor] to go into it if the defendant opened it up voluntarily. I think it has a place in the trial at this time." The prosecutor, however, did not pursue the issue further.

The majority reverses based upon the following point from defendant's brief:

> The trial court erred in its refusal to declare a mistrial when the prosecuting attorney repeatedly referred to details of defendant's prior conviction because the improper use of these details prejudiced the jury and denied defendant the right to an impartial trial and the right to be tried for the offense at issue.

The issue raised in this point is resolved by our holdings in *State v. Powell*, 632 S.W.2d 55 (Mo.App.1982) and *State v. Phelps*, 677 S.W.2d 418 (Mo.App.1984).[2]

In *Powell*, Judge Snyder explained the limitations on the use of a defendant's prior convictions for impeachment. Speaking for our Court, he stated:

> Generally, the use of prior convictions for impeachment is limited to admitting the nature and number of those convictions. Prosecutors may not delve into the details of the prior convictions or emphasize them unduly.
>
> But if the defendant makes ambiguous statements, or denies his guilt in the prior cases in which he was convicted, or makes statements designed to blunt the impact of the prior convictions, it is within the trial court's discretion to permit the prosecutor to test and challenge these statements.

*Powell*, 632 S.W.2d at 58. (citations omitted). In *Phelps*, the trial court overruled an objection to the prosecutor's impeachment using the details of the defendant's prior convictions. We reversed, finding that the prosecutor went too far. Judge Karohl, in the principal opinion, distinguished that case from one in which a proper objection was made and sustained:

> In *State v. Porter*, 538 S.W.2d 888, 891 (Mo.App.1976), we found no prejudicial error because the court sustained proper objection on this ground and instructed the jury to disregard the improper questions. Here the court permitted the questions and the prosecutor increased the prejudicial effect of that error by referring to the answers in closing argument.

*Phelps*, 677 S.W.2d at 421.

Although I believe that defendant, through his equivocation and contention that his case was reduced to a misdemeanor, opened up the issue, the trial court in its discretion sustained the objection and granted him all the relief he requested by admonishing the jury to disregard the question. As the court in *Powell* stated, "There was no error at this stage in the cross-examination...." *Powell*, 632 S.W.2d at 54–55. The majority in this case relies on *State v. Green*, 707 S.W.2d 481 (Mo.App.1986). However, there, unlike here, defense counsel's objection was overruled.

Later, when the prosecutor started to ask defendant about the reduction of his prior conviction to a misdemeanor, defendant further attempted to blunt the effect of that conviction by stating, "Well, being that there was no evidence to convict me in the first place, it shouldn't have been that...." Surely defendant's denial of guilt at this point was sufficient to permit further inquiry under the *Powell* rule. Nonetheless, when the prosecutor began to get specific, the trial court sustained defendant's objection. Apparently realizing that defendant's denials afforded the prosecutor some latitude with respect to the details of defendant's prior conviction, the court denied his request for a mistrial. The prosecutor dropped the line of questioning and did not pursue the issue in his closing argument. Considering these circumstances in light of *Phelps*, it cannot be said that the trial court abused its discretion.

In this case I can find no erroneous ruling by the trial court on the issue of improper impeachment. In any event, be-

---

**2.** My views on this issue were fully explained in my concurring opinion in *Phelps*, 677 S.W.2d at 421.

**890**

cause the evidence of guilt was strong, and the court set the sentence, I can perceive no prejudice. Defendant's other two points also have no merit. I would therefore affirm the judgment of the trial court.