STATE of Missouri, Respondent,

v.

Consuella Renne WRIGHT, Appellant.

No. WD 73441.

Missouri Court of Appeals,
Western District.

July 24, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 2012.

Application for Transfer Denied
Oct. 30, 2012.

Ruth Sanders, Kansas City, MO, for Appellant.

Laura Elsbury, Jefferson City, MO, for Respondent.

Before JAMES M. SMART, JR., P.J., JAMES EDWARD WELSH, J, and ZEL M. FISCHER, Sp. J.

JAMES EDWARD WELSH, Judge.

Consuella Wright appeals the circuit court's judgment convicting her of first degree robbery and armed criminal action. She asserts three points on appeal. First, she contends that the court erred in entering the first degree robbery judgment after being convicted of receiving stolen property in a previous trial. Wright claims that her subsequent conviction for first degree robbery violated her right to be free from double jeopardy. Second, Wright asserts that the court abused its discretion by admitting a prior recorded statement of a witness. She contends that, because the witness's credibility was not attacked, the prior statement was improper bolstering and therefore inadmissible. Lastly, Wright claims that the court erred in not granting a mistrial when the State played a prior recorded statement without properly redacting drug references pursuant to the court's pretrial order. Wright contends that by not granting a mistrial the court violated her right to due process, to a fair trial, and to be tried only for the crimes with which she was charged. We affirm the circuit court's judgment.

## Statement of Facts

On the evening of September 9, 2008, Wright drove her car along with three other individuals, her cousin Brandon Goodwin, Trenae Jones, and Kenny Haley, to a house on Swope Parkway so that Haley could buy drugs. During the drive, the group talked about robbing the drug house. When they arrived, however, they noticed that there were too many people in the house at that time, so they decided to leave and to ask Clint Jones for help in robbing the house. Upon returning to the house with Clint Jones now driving the car, they decided not to rob the house

because there were even more people at the house than before.

They then drove around until they eventually ended up at a gas station in Dearborn, Missouri. While Clint Jones got out of the car to pump the gas, Goodwin went inside to pay for it. Clint Jones pulled the car to the front of the gas station to pick up Goodwin. While they waited, they noticed that Goodwin was robbing the place. Some of the people in the car wanted to leave Goodwin, but Wright told them not to leave as Goodwin was her cousin. When Goodwin got in the car, he told Clint Jones to drive off.

Within a few minutes, the police were following them, and a chase ensued. During the chase, Goodwin threw the money into the back of the car and told Wright and Trenae Jones to hide the money. Wright stuffed some money in her bra and also into the back seat of the car. After the high-speed chase ended, the police arrested all five occupants of the car. Upon arrest, Wright admitted that the money in her bra was money from the convenience store. Wright was charged with four felonies—receiving stolen property, tampering with physical evidence, robbery in the first degree, and armed criminal action. After a jury trial, the jury convicted Wright of receiving stolen property, acquitted her of tampering with physical evidence, but failed to reach a verdict on robbery in the first degree and armed criminal action. A mistrial was declared on these two charges, and the State proceeded to a second trial on these charges. Between the first and second trial, the State entered into a plea agreement with Trenae Jones and Clint Jones in exchange for their testimony against Wright and Goodwin. Additionally, Wright moved *in limine* to prevent the State from submitting evidence of other crimes and bad acts. The court

ruled that it would allow the State to present evidence that the group considered an earlier robbery but not evidence that the house they intended to rob was a "wet" house.[1]

During the second trial, Clint Jones testified that they had planned to rob a drug house. Wright moved for a mistrial because Clint Jones said drug house. The court denied the request for mistrial but instructed the jury to disregard Clint Jones's statement regarding the drug house.

After Trenae Jones testified, the State moved to admit a videotape of her statement to the police. The court allowed the videotape over the Wright's objection. While the audio in the videotape was partially redacted to remove any references to "wet house," two references remained because the tape was not properly redacted. The court considered the evidence a violation of the motion *in limine* but overruled Wright's request for a mistrial. The court offered to instruct the jury to disregard the references, but Wright declined. The jury convicted Wright as an accomplice, with liability based upon evidence that she aided and encouraged Goodwin in the execution and commission of first-degree robbery and armed criminal action. Wright appeals.

## Double Jeopardy

█ In her first point on appeal, Wright claims that she was subjected to double jeopardy by the successive prosecutions for robbery in the first degree after her previous conviction for receiving stolen property. She contends that receiving stolen property is a lesser included offense of first degree robbery. We disagree.

---

1. The parties acknowledge and agree that "wet" is a street name for PCP.

■ Claims of error concerning the double jeopardy clause are questions of law that are reviewed *de novo*. *State v. Mullenix*, 73 S.W.3d 32, 34 (Mo.App.2002). A constitutional claim, such as double jeopardy, "must be raised at the earliest opportunity and preserved at each step of the judicial process." *State v. Sumowski*, 794 S.W.2d 643, 647 (Mo. banc 1990). Wright's double jeopardy constitutional claim was not raised until appeal. As a result, that issue was not preserved. Nevertheless, "because the right to be free from double jeopardy is a constitutional right which goes 'to the very power of the State to bring the defendant in the court to answer the charge brought against him,'" an appellate court should grant plain error review in any case where from the face of the record it appears that the court had no power to enter the conviction. *State v. Elliott*, 987 S.W.2d 418, 421 (Mo.App.1999) (citing *Hagan v. State*, 836 S.W.2d 459, 461 (Mo. banc 1992)).

Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice resulted[.]'" *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error claim review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether

plain error has, in fact, occurred. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc), *cert. denied*, —— U.S. ——, 130 S.Ct. 144, 175 L.Ed.2d 93 (2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *Id.* (citations and internal quotations marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.*

The United States Constitution's Fifth Amendment Double Jeopardy Clause, which is enforceable against the states through the Fourteenth Amendment, provides two distinct protections for criminal defendants: (1) protection from successive prosecutions for the same offense after either acquittal or conviction and (2) protection from multiple punishments for the same offense. U.S. CONST. amend. V and XIV. The proper test for determining whether successive prosecutions violate double jeopardy is the same-elements test. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Daws*, 311 S.W.3d 806, 808 (Mo. banc 2010). In applying this test to determine whether the offense is a lesser included offense, the court simply determines the elements of the offenses at issue and compares them. *State v. Reando*, 313 S.W.3d 734, 738 (Mo.App.2010). "If this comparison establishes that they do not each have an element that the other offense lacks, the guarantee against double jeopardy bars the prosecution of the second offense." *Id.* (Internal quotations and citations omitted); *see also* §§ 556.041, 556.046.1(1), RSMo 2000. "If both offenses have elements that the other lacks,

the guarantee does not bar the subsequent prosecution." *Id.*

Prior to the enactment of section 570.080, RSMo 1977, which is almost identical to the current receiving stolen property statute, the receiving stolen property statute remained mostly unchanged. § 1324, RSMo 1879, § 3553, RSMo 1889, § 4554, RSMo 1909, § 560.270, RSMo 1969. These statutes all began with the phrase "[e]very person who shall buy, or in any way receive." *Id.* This phrase was interpreted by the courts as preventing a person from being charged with both stealing (and robbery) and receiving stolen property because the terms used in the statutes denoted a two-party transaction. *State v. Walker,* 659 S.W.2d 349, 351 (Mo. App.1983); *State v. Jackson,* 594 S.W.2d 377, 378 (Mo.App.1980); *see also State v. Honig,* 78 Mo. 249, 253 (1883) ("If [the accused] is a principal actor in the theft— the actual captor of the property, it is illogical and contradictory to say he has received it from another"). Furthermore, in *State v. Williams,* 784 S.W.2d 276, 281 (Mo.App.1989), the court held that stealing is a lesser included offense of first degree robbery and referred to first degree robbery as "forcible stealing." *Id.* at 281. Because stealing is a lesser included offense of first degree robbery and a person could not be charged with both stealing and receiving stolen property, prior to the enactment of section 570.080 a person could not be charged with both robbery and receiving stolen property.

However, the legislature made a substantial change to the receiving stolen property statute when it repealed section 560.270 and enacted section 570.080 in 1977. The legislature removed the phrase "every person who shall buy, or in any way receive," completely. The new statute provided that a person could be charged with receiving stolen property by not only receiving but also by retaining or disposing of such property. In *State v. Walker,* we affirmed the conviction of a man who was convicted for both stealing and receiving stolen property by disposing of it. 659 S.W.2d at 352. The court reasoned that the terms "retains" and "disposes" denoted a single-party transaction. *Id.* at 351–52 (citing *State v. Sours,* 633 S.W.2d 255, 257 (Mo.App.1982)). Additionally, in *Williams v. State,* 8 S.W.3d 217 (Mo.App.1999), the defendant was charged with receiving stolen property in conjunction with the theft of a vehicle. The Court stated in a footnote:

> The State did not charge defendant for the theft of the van, but instead charged him only with receiving stolen property. The words "retains" and "disposes" as used in § 570.080.1 comprehend a single party offense such that a thief's act of retaining or disposing of property stolen by him or her subjects the thief to prosecution for both stealing and receiving stolen property even though no other party is involved.

*Id.* at 218, n. 1.

Therefore, with the legislature adding the words "retains" and "disposes," a person can now be charged with both stealing and receiving stolen property. Furthermore, since robbery is forcible stealing, a person can now be charged with both robbery in the first degree and receiving stolen property by retaining or disposing of such property.

Moreover, after a comparison between the two offenses, there are at least two elements in the receiving stolen property statute[2] that the robbery in the first de-

---

**2.** The elements for receiving stolen property are: (1) receiving, retaining, or disposing, (2) property of another, (3) for purposes of depriving owner of lawful interest therein, and

gree statute [3] does not have—knowledge or belief that the property has been stolen and retaining stolen property. While robbery does have a purpose element to the offense, the purpose element is in regards to the use of force. The last element in robbery requires proof that the purpose for using or threatening the use of immediate physical force is to acquire or retain possession of the property. Thus, purpose is attached to the force requirement of robbery while the knowledge or belief requirement of receiving stolen property by retaining is in regards to a person's knowledge or belief that the property retained has been stolen. Also, while it may seem obvious or even assumed that a person who commits a robbery knows that the property is stolen, the Missouri Supreme Court in *State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002), stated that "[t]he elements of the two offenses must be compared in theory, without regard to the specific conduct alleged." Thus, in theory, the State could succeed in proving a robbery conviction without ever having to prove that the person charged had knowledge that the property was stolen, which could not be the case for a receiving stolen property charge. Stated another way, in the stealing context, no requirement exists that the property one steals must have been stolen prior to the stealing incident at issue (i.e. it is not required for conviction that a person steal stolen property). In

the receiving stolen property context, the property must already possess the quality of having been stolen when the actor enters the picture and either, receives, retains, or disposes of it.

Furthermore, in this case, retaining is not an element of robbery in the first degree. The first element of robbery in the first degree is that a person must forcibly steal the property of another. § 569.020, RSMo 2000. A person commits the crime of stealing if he or she "appropriates property or services of another with the purpose to deprive him or her thereof." § 570.030.1, RSMo 2000. To "appropriate" means "to take, obtain, use, transfer, conceal, or retain possession of." § 570.010(2), RSMo 2000. Here, appropriate means "to take" possession of because the State proved that Wright appropriated the property of another by taking it. On the other hand, in the receiving stolen property charge, the State proved that Wright retained the stolen property. Therefore, in this case, Wright was charged with receiving stolen property "by retaining" and first degree robbery "by taking." The State did not have to prove that Wright retained the stolen property for the first degree robbery charge.

Finally, Wright argues that *Peiffer v. State*, 88 S.W.3d 439 (Mo. banc 2002), controls this issue. In *Peiffer*, the defendant was charged with first degree tampering

(4) knowing or believing that property has been stolen. § 570.080, RSMo 2000. Here, the State claims that Wright is guilty of receiving stolen property because she retained it. As a result, there are references to "receiving stolen property by retaining" throughout even though the charge is technically only "receiving stolen property" regardless if it is because a person received, retained, or disposed of it.

3. The elements for robbery in the first degree are that a person: (1) appropriated the property of the victim, (2) with the purpose to

deprive the victim thereof, (3) without the victim's consent, or by means of deceit or coercion, (4) used or threatened the use of immediate physical force, and (5) used or threatened the use of immediate physical force for the purpose of preventing or overcoming resistance to taking of the property, or to the retention thereof immediately after the taking. *State v. Harney*, 51 S.W.3d 519 (Mo.App.2001); § 569.020, RSMo 2000. In this case, "appropriate" means to take possession of because Wright is charged with robbery in the first degree by taking.

by possessing an automobile without the consent of the owner and with stealing by appropriating the automobile by retaining possession of it without the owner's consent. The Court concluded that in order to establish guilt for stealing, the State would have to prove all of the elements of first degree tampering. *Id.* at 444. As a result, first degree tampering was a lesser included offense of stealing. *Id.* However, the Court pointed out the narrowness of its holding in a footnote. It reads:

> This case only involves first degree tampering as a lesser included offense of stealing when the tampering is based on possession. The Court expresses no opinion on whether the tampering [in the] first degree is a lesser included offense of stealing when the tampering involves a different means of tampering, e.g., by receiving, selling, altering, defacing, destroying or unlawfully operating a vehicle.

*Id.* at n. 6.

*Peiffer* does not control this case. Here, the State charged Wright with two crimes based upon two different means—one by taking and the other by retaining. In *Peiffer*, the State charged the defendant with two different crimes based on the same means—possession. The Court specifically stated that it "expresses no opinion on whether tampering [in the] first degree is a lesser included offense of stealing when the tampering involves a different means of tampering. . . ." *Id.* Because the two crimes in this case are based upon two different means (forcibly taking and retaining), *Peiffer* does not control.[4]

Wright's right to be free from double jeopardy has not been violated by her successive prosecutions for robbery in the first degree and receiving stolen property

by retaining because receiving stolen property by retaining is not a lesser included offense of robbery in the first degree. Point one is denied.

### Admissibility of Video Testimony

■ In point two, Wright claims that the admission of the State's Exhibit 13, which was the video testimony of Trenae Jones at the police station, was improper bolstering. She contends that, because Trenae Jones's credibility was never attacked, it was improper bolstering. We disagree.

"[A]dmissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." *Nelson v. Waxman,* 9 S.W.3d 601, 603 (Mo. banc 2000). " 'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991) (quoting *Richardson v. Colonial Life & Accident Ins. Co.,* 723 S.W.2d 912, 915 (Mo.App.1987)). "A conviction will be reversed due to admission of improper evidence only if the defendant proves prejudice by showing a reasonable probability that in the absence of such evidence the verdict would have been different." *State v. Williams,* 353 S.W.3d 685, 688 (Mo.App.2011) (internal quotation marks and citations omitted).

■ "[O]nce a witness's credibility has been attacked, prior consistent statements may be used for any rehabilitative purpose, not only in response to charges of recent fabrication or improper influence."

---

4. If, however, the State charged Wright with robbery in the first degree and receiving stolen property both by "retaining" (or some identical means) then *Peiffer* may very well control. However, that is not the case before us.

*State v. Hudson,* 230 S.W.3d 665, 668 (Mo. App.2007). A witness's videotaped testimony is admissible as prior consistent statements to rehabilitate the witness's credibility. *State v. Mueller,* 872 S.W.2d 559, 563 (Mo.App.1994). Improper bolstering occurs when out-of-court statements, such as prior consistent statements, are offered solely to duplicate or corroborate trial testimony. *State v. Ramsey,* 864 S.W.2d 320, 329 (Mo. banc 1993), *cert. denied,* 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994) "If the prior statement is relevant for purposes other than corroboration and duplication of trial testimony, it is not improper bolstering." *Id.*

On Trenae Jones's direct examination, the State questioned her about her plea agreement that she made. Trenae Jones was originally charged with stealing by physically taking property from another. However, in exchange for her testimony against Wright and Goodwin in their respective trials, she was allowed to plead guilty to tampering with physical evidence. Trenae Jones was also asked if as part of her plea agreement she was required to tell the truth and if she was in fact telling the truth. She answered "yes" to both of these questions.

During Trenae Jones's cross examination, Wright asked similar questions of Jones as were asked of Jones during direct exam regarding her plea agreement that she made with the State. However, at the conclusion of the plea agreement questions, Wright asked the following questions:

Q. When you pled guilty to tampering with physical evidence you did not think that you were, in fact guilty of that crime, did you?

A. No.

Q. But when the Judge asked you the question, are you pleading guilty because you are, in fact, guilty, you answered yes?

A. Yes.

Q. And you were under oath when you answered that question yes, weren't you?

A. Yes.

While Wright does not explicitly call Trenae Jones's credibility into question, this line of questioning certainly implies that she would lie under oath. With this questioning, Trenae Jones's credibility was attacked because it implied that because she lied once under oath she may in fact be lying again. Since her credibility was attacked by these questions, the State may introduce prior consistent statements, including those prior consistent statements on videotape, to rehabilitate Trenae Jones's credibility.

Moreover, the circuit court did not come to this decision to admit the videotaped testimony without careful consideration. The State requested on two previous occasions that the videotape in question be allowed to be shown to the jury. The court sustained Wright's objection to its admission both times. When the issue came up the third time, the court asked the State for case law supporting its position. After the court considered the matter overnight and discussed the newly submitted cases from the State the next morning, the court allowed the videotape to be shown to the jury. These actions by the court clearly show that it carefully considered the matter before admitting the videotape.

Consequently, the circuit court did not abuse its discretion in admitting the videotape of Trenae Jones's prior consistent statements because her credibility was attacked by Wright during cross examination. Point two is denied.

### Granting a Mistrial

■ On her third and final point, Wright claims that the court erred in not granting a mistrial when the State played Exhibit 13 without properly redacting drug references pursuant to the court's pretrial order. She contends that by not granting a mistrial the court violated her right to due process, to a fair trial, and to be tried only for the crimes with which she was charged. We disagree.

■ "A mistrial is a 'drastic remedy to be exercised only in those extraordinary circumstances in which the extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed.'" *State v. Goff,* 129 S.W.3d 857, 866 (Mo. banc 2004) (quoting *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995)). The decision of whether or not to grant a mistrial is left to the discretion of the circuit court because it is in the best position to determine whether or not the incident had a prejudicial effect on the jury. *State v. Roberts,* 948 S.W.2d 577, 605 (Mo. banc 1997), *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). The appellate court review of a circuit court's refusal to grant a mistrial is for an abuse of discretion. *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and "is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State ex rel. Kemper v. Vincent,* 191 S.W.3d 45, 49 (Mo. banc 2006) (internal quotation marks and citations omitted).

Wright filed a pre-trial motion asking the circuit court to exclude unfairly prejudicial evidence of other crimes. At issue was whether or not evidence of a plan to commit a robbery of a "wet" house would be allowed. Wright was concerned that any reference to drugs in a case where drugs were not an issue would cause an unfair prejudicial effect on the jury. The circuit court ruled that evidence of a plan to rob a house would be allowed but that there could be no references to the house being a "wet" house or drug house.

During the trial, the State played a prior recorded statement for the jury in which they heard two references [5] using the term "wet" that should have been redacted. The video showed Trenae Jones during police questioning. In the first reference, the detective asked: "After you guys picked up Clint and Clint started driving and drove back to the house for to get the wet, he, you guys said screw it, right?" In the second reference, the detective said: "So at the time that Clint decided not to knock off the wet—."

At the conclusion of showing the videotape, Wright objected to these two references and moved for a mistrial, arguing that the State did not properly redact the drug references in violation of the court's order. The State claimed, however, that the redaction was attempted but was ineffective and any failure on their part was unintentional. The court accepted the State's contention and denied Wright's motion for a mistrial. The court did offer to give the jury a special instruction to disregard those references, but Wright declined the special instruction.

---

5. While there were four drug references made in the video, Wright only objected to two of them. As a result, the other two were not preserved for appeal. Therefore, we will only consider the two references in the video, which were objected to, in determining whether the circuit court abused its discretion by not granting a mistrial because of these references.

In analyzing the prejudicial effect of a reference to evidence of other crimes, Missouri courts use the following five factors:

(1) Whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; (2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; (3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; (4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and (5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt.

*Goff*, 129 S.W.3d at 866, n. 7.

Applying these factors [6] here, we find no abuse of discretion. When considering the second factor, the court looks to see whether the statement was singular and isolated and whether it was emphasized or magnified by the prosecution. There were two references made in the video regarding the type of house the group planned to rob. Furthermore, there was another reference made to the "drug house" by Clint Jones during his testimony. However, none of these statements were emphasized or magnified by the State. The State never mentioned those drug references again. As a result, this factor favors the State.

In regard to the third factor, the reviewing court looks to see whether the remarks were vague and indefinite or whether they made specific reference to crimes committed by the accused. Both statements in the video used the term "wet." On its face, this term would not mean much to the common person. However, to those individuals well versed in street or drug lingo, the term "wet" means PCP. Thus, a "wet house" would be a place where someone could get PCP. Even though during Clint Jones's testimony he did reference the house the group planned to rob as a "drug house," the jury would still have to make an inferential step that "wet" referred to some kind of illegal drug. As a result, to the common juror, the terms "wet" and "wet house" would be vague and indefinite.

Moreover, neither of the two statements made specific references to crimes committed by the accused.[7] As previously mentioned, the term "wet" would not mean much to the jurors. Even if the jurors could determine that "wet" was some kind of illegal substance, there was nothing in the statements that referred to Wright as a person who used "wet" or was even the one getting the "wet." This factor requires specific references to crimes committed by the accused. Nowhere in the first statement does it specifically state that Wright is a drug user or that Wright committed a prior crime.

The second statement where the term "wet" was used referenced Clint Jones deciding not to knock off the "wet." The circuit court said it would allow evidence of the group's plan to rob a house but did not want any references to the type of house that it was. Clint Jones's statement had

6. Because Wright conceded that the first factor favored the State, we will not analyze the first factor.

7. Although, not argued by the State, it may be that neither comment concerns prior bad acts of the defendant. It could be argued that these were acts contemplated but not actually done by the defendant. We, nonetheless, consider Wright's argument because the State violated the directive of the circuit court in its redaction of the tape.

more to do with the crime of robbery than any drug crime. The fact that a group was planning on robbing a drug house does not implicate Wright as a drug user because a person can associate with people who use drugs but they themselves do not in fact use drugs. Therefore, this factor favors the State.

The fourth factor requires the reviewing court to determine whether the court promptly sustained Wright's objection to the statement and instructed the jury to disregard the volunteered statement. Upon objection by Wright, the circuit court immediately offered to give an instruction to the jury to disregard the statement. Wright, however, declined the court's offer to give such an instruction. "The fact that a defendant limits his request for relief to that of a mistrial rather than making a request for a less drastic corrective action cannot aid him." *State v. Porter*, 241 S.W.3d 385, 399–400 (Mo.App. 2007). As a result, this factor favors the State.

The final factor asks whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt. The two references, which were not emphasized or magnified by the State, did not play a decisive role in the determination of guilt. The State offered evidence showing that Wright agreed to let her car be used in a robbery, albeit a different robbery, and that she tried to hide money in an effort to protect her cousin after the robbery. This was sufficient evidence for the jury to convict her. Thus, this factor favors the State. Point three is denied.

### Conclusion

We, therefore, conclude that the circuit court did not err in entering the first degree robbery judgment after being convicted of receiving stolen property in a previous trial because the latter is not a lesser included offense of the former. Further, the court did not err in admitting the prior recorded statement because the witness's credibility was attacked and therefore the prior statement could be used to repair her credibility. Finally, the circuit court did not err in refusing to grant a mistrial after a prior recorded statement was not properly redacted. We affirm the circuit court's judgment.

All concur.