

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD76245 |
| | ) | |
| v. | ) | OPINION FILED: July 29, 2014 |
| | ) | |
| DANIEL DUMOND BROWN, SR., | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Anthony Rex Gabbert, Judge

Before Division Three: Gary D. Witt, Presiding Judge, Joseph M. Ellis, Judge and
Thomas H. Newton, Judge

Daniel Dumond Brown, Sr. ("Brown") was convicted by a jury in the Circuit Court of Clay County of two counts of robbery in the first degree under section 569.020,[1] and two counts of armed criminal action under section 571.015. Brown was sentenced to twenty-five years in prison for each count, with Count II running consecutive to Count I and Counts III and IV running concurrent to Count II. Brown appealed, alleging the trial court (1) plainly erred in denying his motion for a continuance so that he could prepare to

---

[1] All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

represent himself at trial, and (2) abused its discretion in denying his request for a mistrial. We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

On the evening of June 30, 2011, Brown told his former girlfriend, Brandi Scofield ("Scofield"), to drive him to the Pizza Hut in Gladstone in her Suburban and pull into the parking lot. Then, Brown had Scofield call and order a pizza to be delivered to a nearby house then told her to park at an auto body shop close to the Pizza Hut. Brown left the vehicle and walked towards the Pizza Hut near closing time. Brown confronted Charles Sharp ("Sharp"), the closing shift manager, outside of the restaurant. Another employee and witness, Dalton Lindsay, was in his vehicle in the parking lot of the Pizza Hut when the incident began. The only other employee, the delivery driver, was attempting to deliver the pizza Scofield ordered when Brown approached the restaurant. Brown demanded Sharp empty the cash register and open the safe to prove it was empty before Brown took the money and left on foot. Surveillance video from the nearby auto shop showed a dark-colored Suburban in the parking lot and Brown running back to the Suburban about ten minutes after leaving the vehicle, which coincided with the timeline of the robbery. Later that evening, Scofield observed Brown in her garage with cash laid out on a box.

On July 2, 2011, Brown had Scofield take him to the Arby's restaurant in Liberty shortly before the 11:00 p.m. closing time. Brown entered the restaurant and pointed a

---

[2] The sufficiency of the evidence is not at issue. We do not weigh the evidence; rather we accept as true all facts and inferences favorable to the verdict and disregard evidence and inferences to the contrary. *State v. Hawthorne*, 74 S.W.3d 826, 828 (Mo. App. W.D. 2002) (citation omitted).

handgun at the manager, Charles Monk ("Monk"), while demanding money from the cash register. Brown ordered Monk to open the safe while holding a handgun to the back of Monk's head. Monk could only open the part of the safe containing change and some paychecks, which Brown did not take. Brown then took the money from the drive-through cash register and left the restaurant. Brown returned to the Suburban where Scofield saw that Brown was carrying a silver handgun.

That same night, at 11:14 p.m., Liberty Police Officer Jeremy Loy ("Officer Loy"), on patrol, noticed a Suburban being driven without its lights on. Officer Loy was following the vehicle when dispatch alerted him to the Arby's robbery. Officer Loy activated his emergency lights and siren but the vehicle continued driving until it eventually pulled into the parking lot of a Sutherland's store. Officer Loy ordered the occupants of the Suburban, later identified as Brown and Scofield, to get out and get on the ground. After they complied, Officer Loy noticed a large sum of cash next to Brown on the ground. Liberty Police Officer Dan King ("Officer King") arrived at the scene when Brown and Scofield were being ordered out of the Suburban. Officer King observed Brown pull money from his waistband and attempt to throw it under the Suburban.

During a search of the Suburban, Officer Loy discovered a purse containing a large amount of money on the floor and a loaded silver handgun in the glove compartment. A pair of shorts containing Brown's identification and cash in the pockets was later located in the backseat. Monk was taken to the Sutherland's parking lot and

3

identified Brown as the person who robbed the Arby's. Scofield testified against Brown at trial.

Further facts are set forth as necessary.

## ANALYSIS

On appeal, Brown contends two points of error. First, Brown alleges that the trial court committed plain error in denying his November 2, 2012 Motion for Continuance. In his second point, Brown argues that the trial court abused its discretion when it denied his request for a mistrial after an officer testified regarding a prior robbery.

## POINT I

The week prior to the trial date, Brown requested a continuance to allow him to fire his public defender and prepare to represent himself. By way of background, Brown was arraigned on August 26, 2011 and the case was originally set for jury trial on February 6, 2012. Based on a request by Brown, the trial date was continued until April 23, 2012. Based on a request by Brown's counsel, the case was removed from the trial docket and set for a plea hearing on April 27, 2012. The plea negotiations were unsuccessful and the case was again scheduled for a jury trial on June 18, 2012. On June 8, Brown moved for another continuance, which was granted, and the jury trial was rescheduled to November 5, 2012. Brown filed another request for continuance on November 2. That request was denied by the court, and the jury trial began on November 5, 2012. At the November 2 hearing, Brown indicated that he wished to exercise his right to represent himself and requested a further continuance so that he could prepare. After significant discussion of the issues with Brown on the record, the

4

court ruled the jury trial would proceed on November 5 as scheduled, stating: "On Monday morning you can represent yourself or have [appointed counsel]. It is not being continued for any reason." Brown argues on appeal that the court did not give proper consideration of the continuance under the circumstances of preparing to represent himself and that resulted in a "manifest injustice." Brown contends that the denial of his motion for a continuance under these circumstances constituted plain error.

## Standard of Review

The trial court did not deny Brown the right to represent himself, but merely denied Brown a continuance that was requested the week prior to trial, so that he could prepare to do so. The trial court clearly explained to Brown that he could choose to represent himself or proceed to trial with his appointed counsel but either way, the trial would not be continued. Brown appeared on November 5 and proceeded to trial with his appointed counsel. He did not attempt to represent himself or renew his request for a continuance at that time. Because Brown did not allege error in the denial of the motion for a continuance in his motion for a new trial, this issue is not properly preserved and may only be reviewed for plain error to determine whether "manifest injustice or miscarriage of justice has resulted" therefrom. *State v. Edwards*, 365 S.W.3d 240, 245 (Mo. App. W.D. 2012) (citation omitted); Rule 30.20.[3] Plain error must be "evident, obvious, and clear." *Id*. (citation omitted). In addition, the alleged plain error must facially establish grounds for believing that an injustice has occurred. *Id.* (citation

---

[3] All rule references are to Missouri Supreme Court Rules (2014).

omitted). Only if plain error is found do we determine whether the error directly resulted in the injustice alleged. *Id.* (citation omitted).

## Discussion

Brown's Point One lacks legal citation to support the claimed errors made by the trial court. Rule 84.04(d)(1). Rule 84.04(e) states that the appellant should explain, in the context of the case, what law supports the allegation of reversible error. *Washington v. Blackburn*, 286 S.W.3d 818, 821 (Mo. App. E.D. 2009). Brown contends that denying a motion for a continuance under these circumstances is effectively denying Brown's right to self-representation. However, he cites to no legal authority to support this claim. The appellate court does not function in the role of advocate for either party. *State v. Simmons*, 364 S.W.3d 741, 749 (Mo. App. S.D. 2012) (citing *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)). The trial court expressly informed Brown that he had a right to self-representation. No legal support is given, in the context of the case, that a denial of a motion for a continuance constitutes a *de facto* denial of self-representation. Thus, Point One "is inadequate to invoke the jurisdiction of this court and preserves nothing for appeal." *Snyder v. Snyder*, 142 S.W.3d 780, 783 (Mo. App. E.D. 2004) (citation omitted).

*Ex gratia*, we note that even had this point been properly preserved, Brown would still not be entitled to relief. The trial court's decision to grant or deny a continuance is made with contemplation of good cause being shown and for "good and sufficient reasons." § 545.710. "In most circumstances, the decision to grant a continuance rests in the sound discretion of the trial court." *State v. Griffin*, 848 S.W.2d 464, 468 (Mo. banc

6

1993) (upholding a denial of a continuance where the defendant had more than eight months to prepare). Additionally, the trial court uses sound discretion when denying a continuance for lack of preparation when the party had adequate time to prepare. *State v. Wise*, 879 S.W.2d 494, 519 (Mo. banc 1994) (*overruled on other grounds*) (upholding the trial court's decision to deny a continuance when the defendant asked for more time to prepare for the penalty phase because counsel could not prepare for penalty phase until guilt phase was complete).

The trial court did not plainly err in denying the motion for a continuance. This matter had been pending for almost a year and a half. Brown had already received multiple continuances that pushed the trial date back almost nine months from the original date. Brown's appointed counsel was fully prepared to go to trial. The court gave Brown the opportunity to exercise his right of self-representation or to proceed with his appointed counsel. Art. 1 Section 32.1(5) of the Missouri Constitution grants the victims of crime the right to have a speedy disposition of the case so long as this right does not prevent the defendant from having sufficient time to prepare his defense. Nothing from the record supports a finding of error. Appointed counsel indicated multiple times on the record that she was prepared to proceed with trial. Brown fails to identify any evidence that he was not able to be prepared for trial other than the bare allegation that he needed time to prepare to represent himself. The trial court clearly informed him that he had the right to self represent, and Brown chose not to do so. Point One is denied.

## POINT II

In Point Two, Brown argues that the trial court erred in denying his motion for a mistrial when Officer Loy referenced an uncharged crime. Specifically, Brown argues that Officer Loy referenced Brown's involvement in the Pizza Hut robbery in Liberty in violation of an order *in limine*. Brown argues that the trial court abused its discretion by not granting a mistrial when Officer Loy referred to this inadmissible and uncharged prior crime.

### Standard of Review

This court's review for the denial of a mistrial is to determine whether the trial court abused its discretion. *State v. Powell*, 318 S.W.3d 297, 301 (Mo. App. W.D. 2010) (citation omitted). The decision of a mistrial is left to the discretion of the lower court because it is in the best position to determine whether there was a prejudicial effect on the jury. *State v. Wright*, 383 S.W.3d 1, 9 (Mo. App. W.D. 2012) (citation omitted). Granting a mistrial is reserved for only the most extraordinary circumstances to avoid a prejudicial effect and to maintain an impartial jury. *Id.* (citation omitted). A court abuses its discretion when the ruling of denying a mistrial is clearly "against the logic of the circumstances" and is a "shock to the sense of justice and indicate[s] a lack of careful consideration." *Powell*, 318 S.W.3d at 301 (citation omitted).

### Discussion

Before trial, both parties agreed to a motion *in limine* prohibiting the admission of any evidence against Brown of unrelated criminal offenses. (L.F. 24-26, Tr. 38). At trial, however, Officer Loy made an uninvited reference to an unrelated crime. Officer Loy

8

testified on direct testimony about the chain of events leading up to Brown's stop and arrest on July 2, 2011.

Officer Loy testified that he observed a large SUV or van operating at night without any lights activated. He indicated that he had to turn around and then relocate the vehicle. When he did locate it, it was determined to be a Suburban being driven without its headlights on. He followed the vehicle for a period of time. He was then asked:

Q: Did you start to get suspicious of anything at this point, Officer?

A: I did because approximately a week prior, we had some robberies at the Pizza Hut in our city—

At that point Brown properly objected, indicated that the answer violated the ruling on the motion *in limine* regarding evidence of uncharged crimes and requested a mistrial. The State acknowledged that the testimony violated the court's pretrial ruling on the motion *in limine*. The trial court first noted the vagueness of the officer's statement then sustained the objection, denied the mistrial and instructed the jury to disregard the last statement by the officer.

Missouri courts examine five factors when analyzing the prejudicial effect of evidence of this nature. *State v. Wright*, 383 S.W.3d 1, 10 (Mo. App. W.D. 2012).

> 1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and 5) whether, in view of the other evidence

9

presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt.

*Id.* (citing *State v. Goff*, 129 S.W.3d 857, 866 n.7 (Mo. banc 2004)).

"Factor one involves, in essence, an inquiry into whether the evidence of other crimes was injected into the case innocently or whether it resulted from bad faith on the part of the prosecutor or the witness." *State v. Smith*, 934 S.W.2d 318, 321 (Mo. App. W.D. 1996). In *State v. Witte*, the court upheld the denial of a mistrial. 37 S.W.3d 378, 384 (Mo. App. S.D. 1999). The prosecutor asked the witness to explain what made the witness sufficiently suspicious of the defendant. *Id.* at 383. The witness voluntarily mentioned that he was aware of the defendant's past. *Id.* The court ruled that nothing from the interaction shows that the prosecution attempted to elicit that improper reply. *Id.* at 384; *see also Smith*, 934 S.W.2d at 321 (where a State witness was being pushed by defense counsel in cross-examination to violate a motion *in limine* by revealing the witness's knowledge of a prior arrest, neither the State nor the witness evidenced bad faith).

The crux of Brown's argument of factor one is that since the witness made the statement, the prosecution must have caused him to do it. But the record does not support a determination that the State failed to warn Officer Loy before his testimony regarding the ruling on the motion *in limine*. Additionally, the transcript shows that the State merely asked whether Officer Loy was "suspicious of anything" after the officer testified that he saw a car that was "on and running" with its brake lights on but headlights off around 11:14 p.m. After Officer Loy answered, neither the prosecutor nor the witness

mentioned the inadmissible evidence again. There is no evidence to support Brown's contention that the State failed to notify Officer Loy regarding the ruling on the motion *in limine* or that the State set out to elicit improper testimony from this witness. Thus, factor one is not met.

As to factor two, Brown makes no argument that factor two weighs in his favor, presumably because there was only one isolated mention of this evidence. Thus, this factor is not met.

Factor three refers to how vague the reference was to the inadmissible evidence and whether the testimony tied the evidence to the defendant. In *Smith*, the State's witness said that the defendant had been previously arrested for drug possession, which was determined not to be vague because the reference was directly related to the defendant's prior arrest for drugs while on trial for a drug offense. 934 S.W.2d at 319-21. On the other hand, an officer's testimony on the demeanor of the defendant during an arrest, saying "he'd been through it before" was determined to be vague because, while the testimony did indicate that the defendant had been arrested before, there was no mention of the specifics or any details regarding the circumstances of the prior arrest. *Goff*, 129 S.W.3d at 865-66.

More directly on point, in *State v. Gilbert*, a witness's answer referring to crimes that were inadmissible under a motion *in limine*, but did not directly implicate the defendant, was not grounds for a mistrial. 636 S.W.2d 940, 943 (Mo. banc 1982). The witness in that matter was asked to describe a gun transaction when, unprompted, he indicated that the guns were stolen. *Id*. While that was found to be a clear reference to

11

another crime, it did not implicitly accuse the defendant of being a party to that crime. *Id*.

Likewise in this matter, while Officer Loy brought up that the Pizza Hut in "our city"[4] was robbed recently, it was only stated as a general event that had happened. The single mention of the incident did not reference Brown or in any way connect the prior offense to Brown. Thus, the statement was vague and indefinite. "Vague references cannot be characterized as clear evidence associating an accused with other crimes." *Witte*, 37 S.W.3d at 384 (citation omitted).

Factor four has not been met, as the trial court immediately and properly sustained the objection and instructed the jury to disregard the witness's answer. "The jury is presumed to follow the trial court's instructions." *State v. McFadden*, 369 S.W.3d 727, 752 (Mo. banc 2012) (citation omitted). Brown makes no argument that this factor has been met.

Last, the fifth factor requires an examination of other evidence in the case in order to determine how prejudicial the improper testimony was to the defendant. Brown argues that, without the testimony regarding a robbery of the Liberty Pizza Hut, the remaining evidence regarding the Gladstone Pizza Hut robbery would not be sufficient to sustain a conviction. We will not find an abuse of discretion absent an indication that the inadmissible comment played a "decisive role" in the determination of guilt. *Smith*. 934 S.W.2d at 321.

---

[4] Officer Loy was a Liberty police officer so the reference to the Pizza Hut robbery in "our city" is arguably not a reference to the robbery of the Gladstone Pizza Hut at issue in this case.

12

The State's evidence was overwhelming in this matter. Scofield described in detail what happened at each robbery. Her testimony was corroborated by the other witnesses, the videotape of the parking lot where they parked her Suburban during the Pizza Hut robbery, the officer who witnessed Brown try to hide some of the stolen cash under the vehicle after they were stopped, the gun found in the glove compartment and the other eyewitnesses to the robberies. Based on this overwhelming evidence, we cannot find that the mere mention of another robbery with nothing tying it to Brown played a "decisive role" in the jury's decision. Thus, the fifth factor has not been met.

In short, there is no evidence that the prosecution deliberately provoked the improper response by the witness. The statement was not emphasized or subsequently even mentioned by the prosecution. Officer Loy's remarks were vague and referenced an incident with no specifics and were not tied to the defendant. The objection was sustained and a curative jury instruction was given. Finally, the singular comment did not clearly play any significant role in the determination of guilt. Brown has failed to meet any one of the five factors we consider in a review of claims of this nature.

For all of the above reasons, Point Two is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

13