SHERRI B. SULLIVAN, P.J.
Introduction
Rex Eaton (Appellant) appeals his conviction for two counts of Endangering a Correctional Employee by knowingly causing same to come into contact with bodily fluids. We affirm.
Facts and Background
Viewed in the light most favorable to the verdict, the evidence is as follows. On June 18, 2016, Appellant was an inmate at Potosi Correctional Center in Washington County, Missouri. Appellant was not a model inmate; he had numerous recorded conduct violations, many of them for threats or assaults made against correctional employees, and many of those specifically for throwing or threatening to throw urine and feces at correctional employees.
On the morning of June 18, 2016, Potosi Corrections Officers Kimberly Hand (Hand) and David Null (Null) passed Appellant's cell, which he occupied alone. As they passed, Hand and Null heard Appellant make threatening remarks towards them, stating his intent to throw urine and feces on them.
Around 11:00 a.m. that morning, Hand and Null performed a visual check of each inmate in the housing unit that Appellant occupied. As Hand and Null made the inspection, they discovered the window of *843 Appellant's cell had been covered, blocking their view of Appellant. Appellant did not respond to their attempts to get his attention. Null and Hand reported this to Corrections Officer Adam Randazzo (Randazzo), and then instituted a wellness check on Appellant.
Null retrieved a hard plastic shield to place between him and Appellant's door while Randazzo unlocked the food port on the front of Appellant's cell. As he opened the food port, Appellant's hand emerged from within the cell, holding a white container filled with a mixture of urine and feces. Appellant flung the mixture upwards, over the top of Null's shield, striking Null with it on his face and arm.
Null retreated to clean the mixture off himself, as the other officers instituted a use of force protocol. Appellant's cell was doused with pepper spray and he was extracted.
Appellant was charged with two counts of Endangering a Correctional Employee, one count for the urine and one count for the feces. Prior to trial, Appellant filed a motion in limine to exclude the introduction of any evidence of prior uncharged criminal acts. At the pretrial conference, the prosecutor agreed not to introduce any such evidence, with the exception of asking Officers Null and Hand about the threats Appellant made towards them the morning of the incident. Counsel for Appellant agreed to this exception, stating she was more concerned about excluding Appellant's numerous recorded conduct violations. The trial court sustained Appellant's motion in limine , with an exception for testimony involving threats Appellant made towards Null and Hand the morning of the incident.
At trial, the bulk of the State's evidence was comprised of testimony from the three corrections officers, Null, Hand, and Randazzo. As the prosecutor examined Hand, the following exchange was had:
Q: Did Mr. Eaton make any threats to you from the cell?
A: Yes.
Q: What, if anything, did you hear?
A: He was making threats to myself and Officer Null that he was going to throw urine and feces on us.
Q: Okay. Do you remember which exact words he used?
A: That he's known to do this in the past and that -
Upon this statement, counsel for Appellant objected and asked to approach. At sidebar, counsel for Appellant argued the statement violated the motion in limine and was prejudicial to Appellant, and requested a mistrial. The prosecutor stated he was not attempting to elicit testimony that violated the motion in limine , but merely asked about the threats Appellant made that morning. After considering Appellant's objection, the trial court denied Appellant's request for a mistrial but offered to instruct the jury to disregard Hand's statement. Counsel for Appellant refused this offer, opting instead to impeach Hand with the report she had written after the incident, which made no mention of Appellant's threat referencing his past incidents of throwing urine and feces. Counsel for Appellant mentioned Hand's testimony again during closing argument, highlighting the fact that the exact nature of the threat was not mentioned in Hand's report. The prosecutor made no further mention of Hand's testimony, and did not introduce any other evidence contravening Appellant's motion in limine.
At the close of evidence and argument, the jury deliberated and returned a verdict of guilty. After the verdict was read the jury was polled. During the poll, Appellant erupted into a rage, shouting vulgarities *844 and struggling with the guards. Appellant was subdued and restrained, and the jury was cleared from the courtroom. With the jury gone, counsel for Appellant again moved for a mistrial, this time on the basis that, because the jury polling was incomplete when Appellant's outburst began, any juror who had been preparing to say they believed Appellant was not guilty would now "automatically" change their mind after witnessing Appellant's outburst. The trial court again denied Appellant's request for a mistrial. Thereafter, the jury returned to the courtroom and the polling was completed, which was unanimously "guilty." Judgment was entered and Appellant was sentenced to two seven-year sentences to run consecutively.
Points Relied On
Appellant makes two claims on appeal. The first is the trial court abused its discretion when it refused to grant a mistrial after Hand's testimony recounting Appellant's threat, which itself referenced Appellant's prior criminal acts. Appellant's second point is the trial court abused its discretion in not granting a mistrial following Appellant's outburst in the presence of the jury as it was being polled.
Standard of Review
We review the trial court's refusal to grant a mistrial for abuse of discretion. State v. Shelton, 529 S.W.3d 853, 862 (Mo. App. E.D. 2017). "The ruling on a request for a mistrial is left to the sound discretion of the trial court because it is in the best position to observe the impact of the problematic incident." Id. (citation and internal quotation marks omitted). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and when the ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." Id. (citations and internal quotation marks omitted).
Discussion
Point I
Appellant claims he was entitled to a mistrial due to witness Hand's recounting a threat made by Appellant that itself referenced prior criminal acts of his, contrary to the trial court's ruling on his motion in limine.
It is well-settled law in Missouri that, subject to a number of limited exceptions, evidence of prior criminal acts is not admissible in a trial against a criminal defendant. State v. Frezzell, 251 S.W.3d 380, 384 (Mo. App. E.D. 2008). "The rationale underlying this rule is grounded in the view that evidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted." Id. (citing State v. Sladek, 835 S.W.2d 308, 311 (Mo. banc 1992) ).
While a mistrial is a potential remedy for the introduction of inadmissible testimony, it is not the preferred one. "A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." State v. Harris, 477 S.W.3d 131, 138 (Mo. App. E.D. 2015). Appellant argues this is such a situation. He hinges the majority of his argument on State v. Salmon, 563 S.W.3d 725, 2018 WL 1058603 (Mo. App E.D. 2018), where this Court overruled the trial court when it refused to grant a mistrial. In Appellant's view, the instant case and Salmon are similar enough to warrant the same outcome.
However, Salmon and the instant case are easily distinguishable. Salmon involved a defendant on trial for endangering the welfare of a child and abuse or neglect of a *845 child. Id. at 1. Before trial, defendant filed a motion in limine to exclude references to prior criminal acts. Id. at 2. The trial court ruled references to prior criminal acts would be excluded, with the exception of their use for impeachment purposes. Id. During the trial, without a proper basis for impeachment, the prosecutor made several references to defendant's prior criminal acts, including defendant's juvenile record. Id. These references were in the form of leading questions asked of a defense witness on cross-examination. Id. at 5. Importantly, the questions asked by the prosecutor "were not just generic mentions of prior criminal acts, rather, they were peppered with inflammatory references, such as assaulting 'family members' 'a week ago,' and a 'shank[ing].' " Id. Given the strong protection Missouri law gives to juvenile records, and because defendant had not put her character at issue, the prosecutor's numerous intentional references to prior criminal acts caused such prejudice only a mistrial could purge it. Id. at 6.
This contrasts sharply to the instant case. Here, there is but a single errant comment from a State's witness about which Appellant complains. Unlike the prosecutor in Salmon, who wove references to prior criminal acts into leading questions, nothing was said by the prosecutor in the instant case that directly referenced Appellant's prior criminal acts.
Appellant nonetheless counters, arguing " Salmon stands for the proposition that [the prosecutor] is always accountable for the responses [he] elicits." We do not make such a broad reading of Salmon. Salmon is very clear it is discussing circumstances where the prosecutor "intentionally injects an evidentiary error into a trial." Id. at 5 (emphasis added). We cannot say the same about the case at bar. The mere fact a State's witness makes an inadmissible statement on the stand does not automatically impute foul dealing on the State without any suggestion the State acted deliberately to elicit the particular statement, or at the very least failed to warn their witness to comply with the court's ruling on the motion in limine. See State v. Brown, 444 S.W.3d 484, 490 (Mo. App. W.D. 2014). At the pretrial conference, the prosecutor assured the trial court he had warned his witnesses that their testimony should not reference prior criminal acts. Appellant does not argue he did otherwise. While Hand's testimony may have improperly referenced prior criminal acts by Appellant, the reference was in no way invited by the State.
The distinction between inadmissible testimony a witness inadvertently blurts, and that which the prosecutor intentionally elicits, is reflected in the disparate ways they are reviewed by appellate courts. Salmon gives a standard for evaluating the prejudicial effect of invited references to other crimes. When evaluating the prejudicial effect of uninvited references to other crimes, the Missouri Supreme Court has articulated five factors for appellate courts to consider: (1) whether the statement was voluntary and unresponsive to the prosecutor's questioning, or caused by the prosecutor; (2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecutor; (3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; (4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the statement; and (5) whether it appears the statement played a decisive role in the determination of guilt. State v. Goff, 129 S.W.3d 857, 866 n. 7 (Mo. banc 2004).
*846 As to the first factor, while the statement made by Hand was responsive to the prosecutor's question, we can find no suggestion on the record the prosecutor was deliberately eliciting past criminal acts evidence by asking Hand to repeat Appellant's threats the morning of the incident. The question was relevant to whether Appellant knowingly performed the act that he was then threatening. The question itself contained no hint it was probing anything else than what it facially sought. Tangentially, we note the prosecutor had specifically put Appellant on notice he intended to ask Hand and Null about the threats Appellant made that morning. At the pretrial conference, counsel for Appellant stated he had no issue with that line of questioning. If anyone was in a position to know those threats contained statements made by Appellant that Appellant did not want the jury to hear, it was Appellant. Appellant thus had the opportunity to argue for their exclusion before Hand ever took the stand, but did not.
Second, the remark itself was singular and isolated. The prosecutor never again made reference to the remark, nor did he elicit any similar testimony from other witnesses. The only person who thereafter referenced the testimony was counsel for Appellant, when she impeached Hand with her report, and again during closing argument. While this may have been reasonable trial strategy given the circumstances, this cannot weigh in favor of a mistrial on Appellant's urging.
Third, the remark itself was vague and indefinite. Hand's testimony was: "That he's known to do this in the past...." That statement, in itself, does not explicitly communicate what "this" refers to. In context, it seems equally plausible "this" refers to making threats towards corrections officers as it does to throwing urine and feces at them. Although arguably the more reasonable inference is "this" refers to throwing urine and feces, the statement does not reference any specific instance of Appellant doing so. At most, it references a reputation for doing so, which may or may not be well-deserved.
Fourth, the trial court both promptly sustained the objection and offered to instruct the jury to disregard the testimony. While counsel for Appellant, again as a trial strategy decision, refused the instruction, that decision cannot bolster his case on appeal. "The fact that a defendant limits his request for relief to that of a mistrial rather than making a request for a less drastic corrective action cannot aid him." State v. Vickers, 560 S.W.3d 3 (Mo. App. W.D. 2018) (quoting State v. Wright, 383 S.W.3d 1, 11 (Mo. App. W.D. 2012) ).
Finally, we cannot say the uninvited reference played a decisive role in the guilty verdict. Given the isolated and indefinite nature of Hand's statement, we do not view it to be so prejudicial as to be outcome-determinative. The State possessed ample evidence of Appellant's guilt. There were three separate witnesses who testified the same as to almost all of the relevant details of the offense. While counsel for Appellant proffered a compelling case that the incident never actually occurred and the charges were the product of a conspiracy between the corrections officers, ultimately the jury found the State's witnesses credible.
Applying the five factors set out in Goff, we find Hand's reference to prior criminal acts did not create such prejudice that only a mistrial could remedy it. As such, the trial court did not err in refusing Appellant's request for a mistrial. Point I is denied.
*847 Point II
Appellant's second claim on appeal is the trial court erred in not granting a mistrial after his outburst during jury polling.
Appellant claims had he not begun swearing, yelling, and fighting with his guards during the jury polling, a juror may have told the trial court he did not actually agree with the verdict. Of course, there is no way for this Court to know whether Appellant comporting himself during the polling would have produced a different result. But even if we conjectured in favor of Appellant, we would not reverse the trial court's ruling. To the extent any prejudice resulted from Appellant's outburst, it was of Appellant's own making, and as a result he is not entitled to a mistrial. "The trial court was not obliged to reward appellant for his outburst." State v. Olinghouse, 605 S.W.2d 58, 70 (Mo. banc 1980) (citation omitted); see also State v. Hatch, 54 S.W.3d 623, 630 (Mo. App. W.D. 2001). Point II is denied.
Conclusion
The judgment of the trial court is affirmed.
Lawrence E. Mooney, J., and James M. Dowd, J., concur.