

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) WD86933 |
| v. | ) |
| | ) OPINION FILED: |
| | ) March 4, 2025 |
| JAQUEZ LATIN, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Saline County, Missouri**
**The Honorable Dennis A. Rolf, Judge**

**Before Division Two:** Janet Sutton, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Mr. Jaquez Latin ("Latin") appeals from the judgment entered by the Circuit Court of Saline County, Missouri ("trial court"), following a jury trial in which the jury found him guilty of unlawful possession of a firearm. On appeal, Latin raises a sufficiency-of-the-evidence challenge and also argues that the trial court abused its discretion in denying his request for a mistrial. We affirm.

## Factual and Procedural History[1]

On April 19, 2023, Missouri State Highway Patrol Trooper MN ("Trooper")[2] assisted with a traffic stop on Interstate 70 in Saline County, Missouri. The car, a Nissan Sentra, contained three adults and a young child who were traveling from Georgia to Kansas to Florida. Latin's fiancée ("SC") was driving; Latin was in the front passenger seat; and another woman and SC's young son were in the back seat.

Trooper detected the odor of marijuana emanating from the car, and Latin admitted that the occupants had smoked marijuana earlier but asserted that none remained. Having concluded that there was probable cause for a search of the car, Trooper asked the occupants if there was anything they wanted to tell him before he conducted the search. Latin responded that he had a bag of his marijuana inside the car and that it was in his "care, custody and control." Trooper's search revealed a bag of marijuana under the front passenger seat (where Latin had been seated) alongside a black, semi-automatic Taurus 9mm pistol. The pistol contained one round of ammunition in the chamber and eleven rounds in the magazine. In the trunk of the car, Trooper searched luggage shared by Latin and SC and discovered, amongst their commingled clothing, an extended thirty-round magazine, typically used for a pistol and containing eight rounds of the same caliber as the ammunition in the pistol.

---

[1] "We view the evidence in the light most favorable to the jury's verdict, disregarding all contrary evidence and inferences." *State v. King*, 674 S.W.3d 218, 222 n.1 (Mo. App. W.D. 2023).

[2] Pursuant to the directive of section 509.520.1(5) (Supp. IV 2024), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through April 19, 2023, unless otherwise indicated.

Latin did not express surprise when Trooper informed him of the discovery of the pistol. But none of the occupants claimed ownership of the pistol at the traffic stop, and Latin expressly denied any knowledge of the pistol.

Latin was charged by amended felony information, as a prior and persistent offender, with unlawful possession of a firearm. The State and Latin stipulated that, at the time of the stop, Latin had a prior felony conviction.

At trial, Trooper relayed the events of the stop and the discovery of the pistol. In addition, Trooper testified that when he questioned SC at the stop about who was driving the car during the trip, SC told him that she essentially had driven the entire time, although Latin would drive occasionally when she got tired. Conversely, Latin told Trooper the opposite. Trooper testified that he had later determined that the pistol was not owned by any of the car's occupants.

The sole defense witness was SC. She testified that the pistol belonged to her and that she had purchased the Taurus pistol and extended magazine from a private dealer in Texas a few months before. When questioned about whether it would make sense that she bought the gun from a dealer if the gun was lost or stolen, SC testified without objection that a dealer "wouldn't tell me if it was lost or stolen if they were trying to make $350." SC testified that she believed Latin was unaware that she bought the pistol and that it was present in the car (next to Latin's bag of marijuana). SC also said that she had been sitting in the front passenger seat and had switched places with Latin just before the traffic stop but did not move the pistol. Regarding the ammunition magazine found in the trunk amongst clothing owned by SC and Latin, SC testified that she had asked her

3

friend—the adult passenger in the back seat—to tuck it away and that she may have thrown it there.

During cross-examination, SC acknowledged that she had submitted a written statement to Trooper sometime after the stop in which she had stated (1) she had no idea there was a gun in the car at the time of the stop and (2) the gun she owned was a Smith & Wesson handgun. Accompanying the written statement were two videos that SC claimed showed her in possession of the Taurus pistol on the night of purchase. At trial, SC identified the gun shown in the video as the black semi-automatic Taurus 9mm pistol found during the stop. SC asserted that she lied to the officers at the scene when she claimed ignorance of any firearm in the car and that she had falsely claimed ownership of a Smith & Wesson handgun.

In rebuttal, the State recalled Trooper, who testified that he asked SC to come in for an interview regarding her claim of ownership of the pistol but that she had refused to do so. This line of questioning then followed:

> [PROSECUTOR]: At any point were you able to learn the status of the firearm that she is claiming is hers?
>
> [TROOPER]: Yes.
>
> [PROSECUTOR]: What was it?
>
> [TROOPER]: It was entered in NCIC as stolen, sorry, as lost. I contacted the owner and verified that he said it was stolen out of his vehicle.
>
> [LATIN'S ATTORNEY]: Your Honor, I'll object.
>
> (Attorneys approached the bench for conference.)

4

THE COURT:  Come on up.  We talked about this issue earlier.[3]

[LATIN'S ATTORNEY]:  I didn't ask him, I made an oral motion in limine.  That's hearsay.

[PROSECUTOR]:  First of all, it is rebuttal, but she—

THE COURT:  That doesn't make any difference.

[PROSECUTOR]:  She is trying to say she is the owner.  And he knows otherwise.

THE COURT:  It's hearsay.

[PROSECUTOR]:  I asked him what the status of it is.  I didn't ask him about the owner or any of that.  I didn't ask the owner's name.

THE COURT:  Lost, stolen, it doesn't really matter.

[LATIN'S ATTORNEY]:  I'm going to ask for a mistrial, I guess.

[PROSECUTOR]:  It goes to her credibility of a witness, not the Defendant.

THE COURT:  Why would you ask about it?

[PROSECUTOR]:  Because of her credibility.

THE COURT:  He doesn't get to testify about her credibility.

[LATIN'S ATTORNEY]:  For that matter we have a person from Texas.

THE COURT:  They have no chance to cross-examine.  I'm going to instruct the jurors to disregard.  It's hearsay, inadmissible.

[LATIN'S ATTORNEY]:  That is fine, but that just highlights it.

(Attorneys left the bench.)

THE COURT:  All right, Ladies and Gentlemen, the last comment by [Trooper] with regards to what he was told by a third person is blatant

---

[3] During a pre-trial conference, Latin's attorney moved *in limine* that the State be prohibited from presenting hearsay evidence about the gun being stolen.  The trial court agreed that evidence the gun was stolen would be based on hearsay but deferred ruling to see how the evidence came in.

hearsay. Is not admissible and should not be considered and should be completely disregarded by you in making your decision on this case.

No further reference to the gun being stolen occurred during the remainder of the trial.

Trooper concluded his rebuttal testimony by stating that the gun shown in SC's videos was "not even close" to the Taurus pistol found in the car based upon the difference in appearance of the serial numbers, the difference in shape, and the color of the slide. According to Trooper, the gun shown in SC's videos appeared to be a Smith & Wesson handgun.

The jury found Latin guilty of unlawful possession of a firearm. The trial court, having found Latin to be a prior and persistent offender, sentenced him to eight years' imprisonment.

## Point I

Latin contends that a mistrial was necessary because Trooper's hearsay testimony that the gun was stolen was "prejudicial other crimes evidence" because it caused the jury to believe that Latin had stolen the gun.

## Standard of Review

"The ruling on a request for a mistrial is left to the sound discretion of the trial court because it is in the best position to observe the impact of the problematic incident." *State v. Russell*, 656 S.W.3d 265, 278 (Mo. App. W.D. 2022) (quoting *State v. Eaton*, 563 S.W.3d 841, 844 (Mo. App. E.D. 2018)). This Court reviews the trial court's refusal to grant a mistrial for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling "is clearly against the logic of the circumstances then before it and when the ruling is so arbitrary and unreasonable as to shock one's sense of justice and

6

indicate a lack of careful consideration." *Id.* This Court reviews the trial court's decision "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Marley*, 598 S.W.3d 204, 215 (Mo. App. W.D. 2020). Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances. *State v. Moore*, 687 S.W.3d 1, 9 (Mo. App. W.D. 2024).

**Analysis**

Missouri courts examine five factors in addressing claims where the defendant asserts a mistrial should have been granted because of the admission of evidence of uncharged crimes. *State v. Brown*, 444 S.W.3d 484, 489 (Mo. App. W.D. 2014). These factors are: (1) whether the statement was voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; (2) whether the statement was singular and isolated and whether it was emphasized or magnified by the prosecution; (3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; (4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and (5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt. *Id*.

Applying the relevant factors, the record suggests that the first factor weighs in favor of Latin because the State deliberately attempted to solicit the testimony at issue when the prosecutor asked Trooper about the "status" of the pistol that SC had claimed

7

was hers. The remaining factors, however, weigh in favor of finding that Latin was not prejudiced.

Specifically, Latin objects to the singular and isolated reference by Trooper that he had contacted the owner of the pistol "and verified that he said it was stolen out of his vehicle."

Latin cites to *State v. Richardson*, 791 S.W.2d 885 (Mo. App. E.D. 1990), but his reliance on that precedent is misplaced. In *Richardson*, the prosecutor, in a trial on unlawful use of a weapon, improperly emphasized details of the defendant's prior conviction when he twice referred to defendant "blowing a hole in the door" while impeaching the defendant. *Id*. at 886. Despite being admonished by the court, the prosecutor in *Richardson* continued to question the defendant about the details of the earlier conviction. *Id*. at 887. The prosecutor did not stop there; he then introduced evidence that the gun used in the crime for which the defendant was on trial had been stolen and inferred that the defendant had stolen it. *Id*. The appellate court granted the defendant a new trial, finding that the "repeated references emphasizing the use of a gun" were "devastating" to the defendant. *Id*. Here, Latin complains of a singular and isolated reference that the gun had been stolen with no implication by the State that Latin had stolen the gun, markedly different from the repeated references that justified a new trial in *Richardson*.

The present situation is much more akin to *State v. Gilbert*, 636 S.W.2d 940 (Mo. banc 1982). In *Gilbert*, the defendant claimed that the circuit court erred in refusing defendant's request for a mistrial after a state's witness in a sale-of-controlled-substances

8

trial volunteered information that stolen guns were involved in the drug transaction, which violated the circuit court's previous ruling on a motion *in limine*. *Id*. at 942. Specifically, the witness testified that he was told that the guns at issue "were stolen," and defense counsel objected and requested a mistrial. *Id*. at 943. The circuit court sustained the objection, instructed the witness to make no further reference to the stolen weapons, and warned that a mistrial would be declared if the ruling were violated again. *Id*. The circuit court also ordered the statement to be stricken and admonished the jury that they were not to consider the statement as it was irrelevant to the case. *Id*. The Supreme Court concluded that the circuit court did not abuse its discretion in refusing to declare a mistrial because the statement that the guns "were stolen" did not directly refer to the defendant's involvement in other crimes. *Id*.

Trooper's testimony that he spoke with the owner and that the owner reported the pistol stolen was vague and indefinite and, much like the testimony in *Gilbert*, did not connect Latin with the theft of the pistol. Vague and indefinite references cannot be considered clear evidence associating the accused with other crimes. *State v. Brown*, 444 S.W.3d 484, 490-91 (Mo. App. W.D. 2014) (explaining that officer's testimony regarding recent "robberies at the Pizza Hut in our city" in trial for robbery occurring at another fast food restaurant was vague and indefinite statement regarding a general event that had happened and did not reference defendant); *State v. Vincent*, 59 S.W.3d 34, 37 (Mo. App. E.D. 2001) (holding that an officer's statement that defendant's car was searched because it had been taken in a carjacking did not warrant mistrial because it did not implicate defendant as the person who committed the carjacking).

It is even less likely that Trooper's rebuttal testimony that the gun was stolen associated *Latin* with theft of the Taurus pistol because the jury had already heard, without any objection by Latin, the State question SC whether it would make sense that she bought the gun from a dealer if the gun was lost or stolen—to which SC responded that a dealer "wouldn't tell me if it was lost or stolen if they were trying to make $350." The jury, then hearing Trooper's testimony immediately thereafter that the owner identified the gun as having been stolen, would likely more readily connect Trooper's testimony to *SC's* testimony about purchasing the pistol rather than conclude that the testimony implicated *Latin* in the theft of the pistol. The third factor does not support that defendant was prejudiced by Trooper's testimony.

The fourth factor also weighs in favor of finding that Latin was not prejudiced by the testimony. Just like the circuit court in *Gilbert*, the trial court here promptly sustained defense counsel's objection to the statement and immediately instructed the jury to disregard it. A jury is presumed to follow the court's instructions, absent any indication to the contrary. *State v. Smith*, 689 S.W.3d 798, 812 (Mo. App. E.D. 2024).

Latin points to *State v. Rayner*, 549 S.W.2d 128 (Mo. App. 1977), to argue that the curative instruction given by the trial court was not sufficient to cure the prejudice Latin suffered. *Rayner* is, again, distinguishable. In *Rayner*, a police officer testified over objections by the defendant to a post-arrest statement made by a co-conspirator incriminating the defendant. *Id*. at 129. The curative instruction was not given immediately after the statement came into evidence; instead, after the court overruled the objection to the evidence, two more witnesses testified, and then the court broke for noon

10

recess. *Id*. at 131. After the noon recess, the prosecutor advised the court that the evidence in question was, in fact, not admissible. *Id*. It was only at this point that the circuit court orally instructed the jury to disregard the officer's testimony regarding the co-defendant's statement. *Id*. Because the inadmissible testimony "clearly" implicated the defendant and "considerable time elapsed before any attempt was made to expunge the inadmissible evidence from the minds of the jurors," the appellate court granted the defendant a new trial. *Id*. at 132-33. This was not the problem in Latin's case. The statement did *not* implicate Latin, and the trial court *promptly* sustained Latin's objection to the evidence and *immediately* instructed the jury to disregard it. This was a sufficient remedy.

Finally, Trooper's isolated comment, in view of the other evidence presented, did not play a decisive role in the jury's determination of Latin's guilt. The jury heard ample evidence connecting Latin to the pistol to support a conviction of unlawful possession of a firearm. Latin admitted that he had marijuana inside the vehicle, and a seven-gram bag of marijuana, located *next* to the Taurus pistol, was found underneath the passenger seat where Latin was sitting. An extended ammunition magazine for the gun, containing the same caliber of bullets as the pistol, was found commingled with Latin's clothing in luggage he shared with the driver. Latin's defense was that the gun belonged to SC, his fiancée, but her testimony to that effect was not credible. SC only claimed that she owned the pistol and magazine days after the stop, and she initially told Trooper that the gun she owned was a Smith & Wesson, which she later claimed at trial to be a lie. Trooper testified that the videos produced by SC—which she claimed showed her in

11

possession of the Taurus pistol the night she purchased it—actually showed a Smith & Wesson gun. This evidence—and not the single and vague testimony that the gun had been stolen sometime in the past—was evidence from which a reasonable jury could find Latin guilty of unlawful possession of a firearm.

The trial court's instruction to the jury to disregard the inadmissible hearsay immediately after Trooper made the single, vague, and indefinite reference to the pistol being stolen was sufficient to remove any prejudice, and the trial court did not abuse its discretion in rejecting Latin's request for a mistrial.

Point I is denied.

## Point II

For his second point, Latin disputes the sufficiency of evidence to support a determination that he possessed the Taurus pistol found under the front passenger seat because the area was not under his exclusive control and no other incriminating evidence connected him with the pistol.

## Standard of Review

An appellate court's "review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *State v. Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022) (internal quotation marks omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* (internal quotation marks omitted).

12

**Analysis**

"The elements of unlawful possession of a firearm are: (1) knowing possession of a firearm (2) by a person who had been convicted of a felony." *State v. King*, 674 S.W.3d 218, 231 (Mo. App. W.D. 2023) (citing *State v. Fikes*, 597 S.W.3d 330, 334 (Mo. App. W.D. 2019)).

Possession of a firearm "means having actual or constructive possession of an object with knowledge of its presence." § 556.061(38); *State v. Evans*, 410 S.W.3d 258, 262 n.3 (Mo. App. W.D. 2013). The rules for possession of a firearm are similar to the rules for possession of a controlled substance. *State v. McCauley*, 528 S.W.3d 421, 430 (Mo. App. E.D. 2017).

A defendant has actual possession of a firearm if he has the firearm on his person or within his easy reach and convenient control. *State v. Clark*, 524 S.W.3d 609, 612 (Mo. App. E.D. 2017). A defendant has constructive possession if he has the power and the intention at a given time to exercise dominion or control over the object either directly or through another. *Evans*, 410 S.W.3d at 262. Constructive possession requires, "at a minimum, that [the defendant] had access to and control over the area where the [contraband] was found." *Id.* (alteration in original) (quoting *State v. Roggenbuck*, 387 S.W.3d 376, 382 (Mo. banc 2012)).

In possession cases, where there is joint control over the area in which the contraband is found, "evidence of additional incriminating circumstances that imply knowledge may be required." *Id.* (internal quotations marks omitted) (quoting *State v. Warren*, 304 S.W.3d 796, 800 (Mo. App. W.D. 2010)). Additional incriminating

13

circumstances that will support an inference of knowledge and control can take the form of defendant's easy access to the items; defendant's close proximity to the items; finding defendant's personal belongings with the items; and conduct by defendant indicating a consciousness of guilt, such as making false statements in an attempt to deceive the police. *Id.* at 263. We consider the totality of the circumstances in deciding whether the evidence of additional incriminating circumstances sufficiently supports an inference of knowledge and control. *Id*.

Here, there was sufficient evidence for a reasonable factfinder to conclude beyond a reasonable doubt that Latin had possession of the firearm. Latin's fiancée, SC, had been the primary driver on the lengthy road trip, and Latin was seated in the front passenger seat at the time of the stop in Saline County. Prior to a search of the car, Latin told Trooper that there was a bag of marijuana inside the car and admitted to the "care, custody, and control" of the bag of marijuana. Searching under the front passenger seat—a location that Latin had superior access to and that was readily accessible by him—Trooper found Latin's bag of marijuana and, immediately next to Latin's marijuana, the Taurus pistol.

We find *State v. Glaze*, 611 S.W.3d 789 (Mo. App. W.D. 2020) instructive. Glaze was charged with unlawful possession of a controlled substance and drug paraphernalia after a search discovered a black bag containing drugs and paraphernalia on the floorboard in front of the passenger seat in which Glaze was seated. *Id*. at 792-93. The bag also contained food and beer that Glaze reported as her belongings. *Id*. at 793. Glaze asserted the same argument Latin makes here—that her proximity to the contraband

14

could not be considered incriminating evidence linking her to the contraband because she was a joint occupant with the driver in the car. *Id*. at 796-97. Rejecting this argument, this Court concluded that because the bag, which admittedly contained Glaze's personal belongings, was found in the passenger floorboard, it could be considered as additional incriminating evidence linking Glaze to the contraband because she had superior access to the contraband compared to the driver. *Id.* at 797.

Here, the Taurus pistol was directly *under* Latin's seat in the car; it was even less accessible to the other occupants of the car than the contraband in *Glaze* found on the front floorboard. Accordingly, Latin had far superior access to the pistol than the driver and the back-seat adult passenger. And, much like the contraband next to defendant's personal property in *Glaze*, the pistol was located right next to property—the bag of marijuana—that Latin admitted was under *his* care, custody and control. A reasonable juror could conclude that, because Latin had control of the area in which the marijuana was hidden, he also had control over the pistol found alongside the marijuana.

Moreover, evidence that an ammunition magazine for use with the pistol and containing the same ammunition was found in luggage used by Latin and containing his clothing was even more incriminating evidence to link the pistol to Latin. *See, e.g., State v. Jackson*, 681 S.W.3d 248, 258-59 (Mo. App. S.D. 2023) (affirming conviction for unlawful possession of a firearm where guns were discovered in drawer of bedroom dresser containing personal items of defendant and also those of defendant's girlfriend with whom he shared a bedroom). And, Latin's defense witness and his statements to law enforcement about his knowledge of the Taurus pistol were moving targets that the

15

jury concluded were not credible. *See, e.g., State v. Woods*, 284 S.W.3d 630, 640-41 (Mo. App. W.D. 2009) (first alteration in original) ("[T]he factfinder is entitled to consider a [party]'s dishonesty about a material fact as affirmative evidence of guilt.").

Considering the totality of this evidence, a juror could have reasonably concluded beyond a reasonable doubt that Latin possessed the 9mm Taurus pistol that Trooper found under his seat.[4]

Point II is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.

---

[4] Disregarding our standard of review, Latin recites facts in his appellate briefing in a light most favorable to his defense rather than his conviction by the jury. Likewise, he cites to precedent bearing little factual and procedural relevance to the present case. *See State v. Glass*, 439 S.W.3d 838 (Mo. App. E.D. 2014) (no evidence defendant had easy and routine access to the firearms found in a gun cabinet located in parents' bedroom or that defendant ever used firearms); *State v. McCauley*, 528 S.W.3d 421 (Mo. App. E.D. 2017) (no incriminating evidence that tied defendant to the gun found in a kitchen drawer other than defendant shared residence with girlfriend); *State v. Buford*, 309 S.W.3d 350 (Mo. App. S.D. 2010) (only evidence offered to link defendant to drugs in car was defendant's "nervousness"); and *State v. Condict*, 952 S.W.2d 784 (Mo. App. S.D. 1997) (only evidence linking defendant to drugs was his presence, along with several others, at the time the drugs were found). Needless to say, the cited precedent is inapposite and unpersuasive to Latin's present appeal.